UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Stanley B. Immel,   Case No. 17-22036-GMH

Debtor.   Chapter 13

**DECISION ON LIEN AVOIDANCE**

Section 522(f) of the Bankruptcy Code authorizes debtors to avoid most liens on certain types of exempt property, including a "nonpossessory, nonpurchase-money security interest in" implements and tools of the trade of the debtor. 11 U.S.C. §522(f)(1)(B)(ii). The Code cabins that authority when a debtor uses state-law exemptions. If a debtor elects state-law exemptions for implements and tools of the trade under the law of a state that "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt", then the debtor may not avoid the lien "to the extent the value of such implements . . . [and] tools of the trade . . . exceeds $6,425." 11 U.S.C. §522(f)(3). The question presented is whether Wisconsin law "prohibits avoidance of a consensual lien on property" for purposes of §522(f)(3)'s lien-avoidance cap.

I

The debtor has claimed certain farm equipment as exempt under Wisconsin statute §815.18(3)(b). CM-ECF Doc. No. 1 at 19; see also Wis. Stat. §815.18(3)(b) (allowing a debtor to exempt up to $15,000 for "[e]quipment, inventory, farm products, and professional books used in the business of the debtor"). The debtor filed a modified chapter 13 plan proposing to sell farm equipment in which he has claimed the $15,000

equipment exemption under Wisconsin law. CM-ECF Doc. No. 55. Under the proposed modified plan, the debtor will retain the first $15,000 of the net sale proceeds and avoid State Bank of Newburg's lien on the equipment up to the $15,000 exemption. CM-ECF Doc. No. 55 at 2. The Bank objects, contending that the debtor can only avoid its lien up to §522(f)(3)'s $6,425 cap. CM-ECF Doc. No. 56.

The court, with the parties' agreement, approved the plan modification subject to a later determination of the extent to which §522(f) authorizes avoidance of the Bank's lien. The court directed the debtor to hold the first $15,000 of net proceeds in his attorney's client trust account pending this court's resolution of that issue. CM-ECF Doc. No. 67-2.

The debtor does not dispute that the Bank has a perfected, first-priority security interest in substantially all of the debtor's personal property, including the debtor's farm equipment. And the Bank does not contest the debtor's claim to a $15,000 exemption in the farm equipment under Wisconsin statute §815.18(3)(b). CM-ECF Doc. No. 1 at 19. Also, neither party disputes that the farm equipment constitutes "implements" or "tools of the trade" of the debtor for purposes of §522(f)(3). The parties only disagree about the application of §522(f)(3)'s $6,425 cap.

II

A

The §522(f)(3) cap on lien avoidance applies when state exemption law prohibits the debtor from avoiding "a consensual lien on property otherwise eligible to be claimed as exempt property". 11 U.S.C. §522(f)(3)(B).[1] Wisconsin exemption law

---

[1] Section 522(f)(3) of title 11 provides as follows (with added emphasis):
In a *case in which State law that is applicable to the debtor*—
  (A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
  (B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property[,] or *prohibits avoidance of a consensual lien on property otherwise eligible*

expressly limits a debtor's use of an exemption against a consensual or statutory lien: "***No property otherwise exempt may be claimed as exempt in any proceeding*** brought by any person to recover the whole or part of the purchase price of the property or ***against the claim or interest of a holder of a security interest***, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage ***or any consensual*** or statutory ***lien***." Wis. Stat. §815.18(12) (emphasis added). This limitation on using an exemption "against . . . a holder of . . . a consensual . . . lien" prohibits a debtor from using Wisconsin exemptions to avoid or otherwise defeat a consensual lien.

Wisconsin law thus satisfies §522(f)(3)(B), and the debtor can only use §522(f) to avoid the Bank's consensual lien up to $6,425. The Bank is therefore entitled to receive all equipment-sale proceeds in excess of that amount. See *In re Parrish*, 186 B.R. 246 (Bankr. W.D. Wis. 1995).

B

In arguing to the contrary, the debtor relies on decisions issued by the district court and bankruptcy court in *In re Ehlen*. Both *Ehlen* decisions conclude that Wisconsin exemption law does not prohibit avoidance of consensual liens for purposes of §522(f)(3)'s lien-avoidance cap. *United States v. Ehlen (In re Ehlen)*, 207 B.R. 179 (W.D. Wis. 1997), *aff'g In re Ehlen*, 202 B.R. 742 (Bankr. W.D. Wis. 1996).

The *Ehlen* decisions reason that to trigger §522(f)(3)(B)'s prohibits-avoidance provision a state law must "do more than limit what property can be claimed as

---

*to be claimed as exempt property*; *the debtor may not avoid the fixing of a lien* on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor ***to the extent the value*** of such implements, professional books, tools of the trade, animals, and crops ***exceeds $6,425***.

exempt; it must prohibit lien avoidance explicitly". 207 B.R. at 184; 202 B.R. at 749–50. They read Wisconsin statute §815.18(12) as "simply provid[ing] that property subject to a consensual lien may not be claimed as exempt." 207 B.R. at 184 (quoting 202 B.R. at 749) (internal quotation marks omitted).

The *Ehlen* courts' reading of §815.18(12) ignores its full text and the context provided by other sections of the exemption statute, contrary to Wisconsin Supreme Court teaching on interpreting Wisconsin statutory law. See *State ex rel. Kala v. Circuit Court for Dane Cty.*, 681 N.W.2d 110, 123–24 (Wis. 2004). In addition to the fact that §815.18(12) provides that property cannot be claimed as exempt "against" the holder of a consensual lien, §815.18(2)(h)'s definition of "exempt" does what the *Ehlen* courts attribute to §815.18(12): "'Exempt' means free from any lien obtained by judicial proceedings and is not liable to seizure or sale on execution or on any provisional or final process issued from any court, or any proceedings in aid of court process." Wis. Stat. §815.18(2)(h). Again, §815.18(12) by its terms goes further. It prohibits claiming an exemption in property that is "otherwise exempt"—that is, exempt from judicial process as stated in §815.18(2)(h)—"against . . . any consensual . . . lien." Wis. Stat. §815.18(12). So, contrary to the *Ehlen* courts' conclusions, §815.18(12) does not "'simply provide[] that property subject to a consensual lien may not be claimed as exempt.'" 207 B.R. at 184 (quoting 202 B.R. at 749). Section 815.18(12) prohibits using an exemption either defensively against a creditor collecting on a consensual lien or offensively to avoid a consensual lien on exempt property.

The *Ehlen* decisions do not propose a different understanding of how Wisconsin exemption law operates. Instead, those decisions suggest that only state laws that use the term "lien avoidance" or some similar phrase satisfy §522(f)(3)(B)'s prohibits-avoidance provision. The *Ehlen* courts base this conclusion on an inference of

congressional intent. They divine this intent from a written statement submitted by the American Bankers Association to the House of Representatives Judiciary Committee's Subcommittee on Economic and Commercial Law when the subcommittee was considering what became the Bankruptcy Reform Act of 1994, which added §522(f)(3)(B) to title 11. *In re Ehlen*, 202 B.R. at 748–49 (discussing *Bankruptcy Reform: Hearing Before the Subcomm. on Econ. and Commercial Law of the H. Comm. on the Judiciary*, 103d Cong. (1994) (statement of Philip S. Corwin, Dir. and Counsel, Operations and Retail Banking, Am. Bankers Ass'n) ("*Am. Bankers Ass'n Statement*")); see also 207 B.R. at 185 (explaining the bankruptcy court's conclusion that §522(f)(3)(B) did not apply to Wisconsin based on the American Bankers Association's statement).

The American Bankers Association's statement in part championed proposed changes to §522(f) intended to mitigate the effect of *Owen v. Owen*, 500 U.S. 305 (1991). *Owen* overruled lower-court decisions that had made §522(f) lien avoidance unavailable when the debtor used exemptions under state law that defined exempt property as excluding property encumbered by consensual liens. 500 U.S. at 313–14. After *Owen*, debtors in states with unlimited or large tools-of-the-trade exemptions (for example) could use §522(f) to avoid non-purchase-money consensual liens in amounts that far exceeded the modest exemption amounts provided under federal law. The American Bankers Association's statement observed that a proposed amendment to §522(f) that capped the avoidance amount when state law permitted an unlimited exemption would not address a perceived detrimental effect of §522(f) lien avoidance on agricultural lending in Texas, which had a large, but not unlimited, exemption. In proposing a further limitation, the American Bankers Association noted, "Texas law . . . permits preexisting lien encumbrances on otherwise exemptible property", but, as a result of *Owen*, "Texas lenders considering a loan application from a farmer or small business

today can no longer rely on state law to preserve their lien in bankruptcy". *Am. Bankers Ass'n. Statement*, 103d Cong. at 220–21 (emphasis omitted). In order to protect these lenders, the statement "urge[d] the Committee to include" in the bankruptcy-reform legislation text that became the prohibits-avoidance clause of §522(f)(3)(B). *Id.* at 221. From this legislative-history snippet *Ehlen* infers that the prohibits-avoidance clause of §522(f)(3)(B) only applies to debtors similarly situated to those under Texas law because, "[t]his portion of § 522(f)(3)(B) was added specifically to benefit Texas lenders". 202 B.R. at 749; see also 207 B.R. at 184–85 (recounting the bankruptcy court's conclusion on the legislative history).

But "[s]tatutes often are written more broadly than their genesis suggests." *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 749 (7th Cir. 2013). And, since *Ehlen*, the Supreme Court has repeatedly endeavored to construe the Bankruptcy Code based on its text without resort to legislative history. See, e.g., *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text".); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations omitted); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 459 (1999) (Thomas, J., concurring) ("Our precedents make clear that an analysis of any statute, including the Bankruptcy Code, must not begin with external sources, but with the text itself."). In fact, the Supreme Court has "decline[d] to accord any significance to [ ] statements", like the American Bankers Association statement relied on by *Ehlen*, that are neither "made by a Member of Congress, nor . . . included in the official Senate and House Reports." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) (quoting *Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986)). In applying

the Bankruptcy Code, this court must "apply the text—which both Houses of Congress approved and the President signed—not themes from a history that was neither passed by a majority of either House nor signed into law." *Peterson*, 729 F.3d at 749.

Section 522(f)(3)(B)'s reference to state statutes that "prohibit[] avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property" is not so ambiguous as to justify *Ehlen*'s resort to legislative history to render §522(f)(3)(B)'s prohibit-avoidance provision inapplicable to Wisconsin law. Again, neither of the *Ehlen* decisions suppose that Wisconsin law authorizes debtors to avoid consensual liens on exempt property. Nor do they suggest that the effect of §815.18(12) would be any different if its prohibition on using a claim of exemption "against" a consensual lien were replaced with a prohibition on using a claim of exemption "to avoid" a consensual lien.

Finally, the debtor here urges the court to adopt the *Ehlen* bankruptcy court's reasoning that "an expansive reading of § 522(f)(3) is not in keeping with the intent of § 522(f) itself." CM-ECF Doc. No. 70 at 7 (quoting 202 B.R. at 750). Section 522(f), reasoned the *Ehlen* bankruptcy court, "was adopted to further the 'fresh start' policy of the Code and to assure that debtors have a measure of financial stability as they proceed forward with their lives." 202 B.R. at 750.

"Any fresh-start policy", however, "must balance the gains from new beginnings against the costs of making it harder for lenders to collect. The more difficult collection becomes, the fewer assets are available to secure loans, the costlier is credit." *In re Erickson*, 815 F.2d 1090, 1094 (7th Cir. 1987). What the Seventh Circuit explained about construing the scope of Wisconsin's former exemption law applies equally to the debtor's suggestion that the Bankruptcy Code's fresh-start policy supports circumscribing §522(f)(3)(B). Section 522(f)(3)(B) reflects the balance Congress struck on

allowing debtors to avoid consensual liens as part of their fresh start. Congress directed that when a state prohibits the avoidance of consensual liens on otherwise exempt property, debtors' ability to avoid consensual liens that impair exemptions under that state's law is subject to §522(f)(3)'s cap. As explained above, Wisconsin law contains that prohibition. The debtor's lien-avoidance authority is limited accordingly.

III

The court will enter a separate order that (a) sustains State Bank of Newburg's objection to the lien-avoidance provision of the plan, (b) declares that the debtor can only avoid the Bank's lien up to $6,425, and (c) directs the debtor to turn over all equipment sale proceeds in excess of that amount to State Bank of Newburg.

August 2, 2018

G. Michael Halfenger
United States Bankruptcy Judge