UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Stanley B. Immel,                    Case No. 17-22036-GMH

Debtor.                    Chapter 13

**OPINION ON CERTIFICATION OF THE AUGUST 2, 2018 ORDER FOR DIRECT REVIEW IN THE COURT OF APPEALS UNDER 28 U.S.C. §158(d)(2)**

This opinion accompanies this court's certification for direct appeal under 28 U.S.C. §158(d)(2) of the August 2, 2018 order finally adjudicating the debtor's request to avoid the entire lien of the State Bank of Newburg under 11 U.S.C. §522(f). See Fed. R. Bankr. P. 8006(e)(1).

QUESTION PRESENTED

Section 522(f) of the Bankruptcy Code authorizes debtors to avoid most liens on specified types of exempt property, including "nonpossessory, nonpurchase-money security interest[s] in" implements and tools of the trade of the debtor. 11 U.S.C. §522(f)(1)(B)(ii). Section 522(f)(3) of the Code caps the extent to which a debtor can avoid these liens at $6,425 when the debtor elects to use exemptions under the law of a state that "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt". 11 U.S.C. §522(f)(3).

The sole question presented is:

Does Wisconsin law, which provides that "No property otherwise exempt may be claimed as exempt . . . against the claim or interest of a holder of . . . any consensual . . . lien", Wis. Stat. §815.18(12), "prohibit[] avoidance of a consensual lien on property otherwise eligible to be claimed as exempt", as stated in 11 U.S.C. §522(f)(3)(B), thus triggering §522(f)(3)'s lien-avoidance cap?

In answering this question affirmatively, the bankruptcy court ruled consistently with *In re Parrish*, 186 B.R. 246 (Bankr. W.D. Wis. 1995), and declined to follow the contrary holdings of the district court and bankruptcy court in *United States v. Ehlen (In re Ehlen)*, 207 B.R. 179 (W.D. Wis. 1997) (Crabb, J.), *aff'g In re Ehlen*, 202 B.R. 742 (Bankr. W.D. Wis. 1996) (Utschig, J.).

NECESSARY FACTS AND PROCEDURAL BACKGROUND

State Bank of Newburg has a perfected, first-priority security interest in substantially all of the debtor's personal property, including the debtor's farm equipment. The debtor has asserted that $15,000 of his farm equipment is exempt under Wisconsin Statutes §815.18(3)(b). These matters are uncontested.

The debtor's modified chapter 13 plan proposed that the debtor would sell the farm equipment and retain the first $15,000 of the net sale proceeds, asserting a right to avoid under §522(f)(1) State Bank of Newburg's lien on the equipment up to the $15,000 Wisconsin-law exemption. CM-ECF Doc. No. 55, at 2. The Bank objected, contending that the debtor can only avoid its lien up to §522(f)(3)'s $6,425 cap. CM-ECF Doc. No. 56.

The court, with the parties' agreement, approved the plan modification subject to its later determining the extent to which §522(f) authorizes avoidance of the Bank's lien. CM-ECF Doc. No. 63. The court directed the debtor to hold the first $15,000 of net proceeds in his attorney's trust account pending this court's final resolution of the lien-avoidance issue. CM-ECF Doc. No. 67-2.

On August 2, 2018, this court ordered that §522(f) only authorizes the debtor to avoid the bank's lien up to $6,425, as provided in §522(f)(3). CM-ECF Doc. Nos. 92 and

93. The August 2 order finally adjudicates the parties' dispute over the extent to which the debtor can avoid the Bank's lien.

STATEMENT ON JURISDICTION

**1. Bankruptcy court's jurisdiction**. The bankruptcy court has jurisdiction over the debtor's chapter 13 bankruptcy case by operation of 28 U.S.C. §157 and the district court's order of reference to the bankruptcy court of all cases and proceedings arising in, under, or related to title 11 of the United States Code. See Order of Reference (E.D. Wis. July 16, 1984), available at http://www.wied.uscourts.gov. Section 1334 of title 28 gives the district court jurisdiction over the debtor's bankruptcy case and the parties' lien dispute. 28 U.S.C. §1334. Section 157(a) of title 28 authorizes the district court to refer those matters to the bankruptcy court. 28 U.S.C. §157(a). The parties' dispute over the extent to which the debtor can avoid the bank's lien is a core proceeding under 28 U.S.C. §157(b)(2)(B), (K) & (L).

**2. Court of appeals' discretionary jurisdiction over the bankruptcy court's final order.** The court of appeals has permissive jurisdiction under 28 U.S.C. §158(d)(2)(A) to hear an appeal of a final bankruptcy-court order if (among other alternatives) the bankruptcy court certifies that the order meets one or more of that section's criteria and the court of appeals authorizes a direct appeal:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court . . . acting on its own motion . . . certif[ies] that—
>
> (i) the . . . order . . . involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; [or]
> (ii) the . . . order . . . involves a question of law requiring resolution of conflicting decisions . . .
> . . .

> and if the court of appeals authorizes the direct
> appeal of the . . . order . . . .

28 U.S.C. §158(d)(2)(A); see also §158(a) (affording the district court "jurisdiction to hear appeals . . . from final . . . orders . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title").

The August 2, 2018 order declares that §522(f) of the Bankruptcy Code authorizes the debtor to avoid the lien only up to §522(f)(3)'s $6,425 cap and directs the debtor to remit sale proceeds in excess of that amount to the bank. (A copy of the August 2, 2018 order is attached to the notice of appeal, which is attached as exhibit A to this opinion.) The order thus definitively resolves a controversy over the application of §522(f)'s lien-avoidance authority, thereby resolving an "individual controvers[y] that might exist as a standalone suit outside of bankruptcy." *Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016). Therefore, the August 2, 2018 order is "final" for purposes of 28 U.S.C. §158.

The debtor appealed the bankruptcy court's August 2, 2018 order to the district court on August 10, 2018. CM-ECF Doc. No. 96 (attached as exhibit A to this opinion). Under Federal Rule of Bankruptcy Procedure 8006(b), the matter remains pending in the bankruptcy court until 30 days after the effective date of the notice of appeal under Federal Rule of Bankruptcy Procedure 8002. As there is no pending motion under Federal Rules of Bankruptcy Procedure 7052, 9023, or 9024, the notice of appeal was effective when filed on August 10, 2018. See Fed. R. Bankr. P. 8002.

### DECISIONS RELEVANT TO THE APPEAL

The bankruptcy court's August 2, 2018 decision on lien avoidance is exhibit B to this opinion.

The decisions in *United States v. Ehlen (In re Ehlen)*, which reached holdings contrary to this court's August 2 decision are exhibits C (district court, 207 B.R. 179 (W.D. Wis. 1997) (Crabb, J.)) and D (bankruptcy court, 202 B.R. 742 (Bankr. W.D. Wis. 1996) (Utschig, J.)) to this opinion.

The decision in *In re Parrish*, which applied §522(f)(3) under Wisconsin law in the same way as the August 2 decision, is exhibit E to this opinion (186 B.R. 246 (Bankr. W.D. Wis. 1995) (Martin, J.)).

STATUTES NECESSARY TO UNDERSTAND THE QUESTION PRESENTED

**Section 522(f), title 11, United States Code (emphasis added):**

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . .

(B) a nonpossessory, nonpurchase-money security interest in any—

. . .

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor . . .

. . . .

(3) In a case in which State law that is applicable to the debtor—

. . .

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property[,] or **prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property**;

the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $6,425.

**Section 815.18, Wisconsin Statutes:**

**(2)** DEFINITIONS. In this section:

. . . .

(h) "Exempt" means free from any lien obtained by judicial proceedings and is not liable to seizure or sale on execution or on any provisional or final process issued from any court, or any proceedings in aid of court process.

. . . .

**(3)** EXEMPT PROPERTY. The debtor's interest in or right to receive the following property is exempt, except as specifically provided in this section . . .

**. . . .**

(b) *Business and farm property*.

1. Equipment, inventory, farm products, and professional books used in the business of the debtor or the business of a dependent of the debtor, not to exceed $15,000 in aggregate value.

. . . .

**(12)** LIMITATIONS ON EXEMPTIONS. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

REASONS FOR CERTIFYING ORDER FOR DIRECT REVIEW

A

**1. The appeal presents a question of law as to which there is no controlling precedent.** The resolution of the parties' dispute depends solely on the answer to a legal question on which there is no controlling precedent from the Supreme Court or the Court of Appeals for the Seventh Circuit: Does Wisconsin Statutes §815.18(12) prohibit avoidance of a consensual lien on otherwise exempt property, thus triggering 11 U.S.C. §522(f)(3)'s $6,425 cap on the §522(f)'s lien-avoidance authority?

**2. The question of law presented requires resolution of conflicting decisions.**

In one of the earliest decisions examining §522(f)(3) after Congress added that provision in the Bankruptcy Reform Act of 1994, Bankruptcy Judge Robert Martin ruled, like the bankruptcy court in this case, that Wisconsin exemption law triggered §522(f)(3)'s lien-avoidance limitation. *In re Parrish*, 186 B.R. 246.

The following year, Bankruptcy Judge Thomas Utschig reached the opposite conclusion in *In re Ehlen*, 202 B.R. 742. And the District Court for the Western District of Wisconsin affirmed that ruling. See *United States v. Ehlen (In re Ehlen)*, 207 B.R. 179.

The *Ehlen* courts' rulings depend on two statutory-interpretation conclusions—one about the Bankruptcy Code and another about Wisconsin's exemption statute. The *Ehlen* decisions read "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property" in §522(f)(3)(B) to encompass only those state laws that prohibit avoidance of consensual liens expressly—that is, statutes that use the word "avoidance". See 207 B.R. at 184 ("[Section] 815.18 says nothing about avoidance of the lien . . . . To give proper effect to the language of § 522(f)(3)(B), state law . . . must prohibit lien avoidance explicitly . . . ."); 202 B.R. at 749 ("[T]here is no reference to lien avoidance in the text of § 815.18(12)."). The *Ehlen* decisions read §815.18(12), which provides that "No property otherwise exempt may be claimed as exempt . . . against the claim or interest of a holder of . . . any consensual . . . lien", as defining what property can be exempt, rather than prohibiting the use of exemptions against consensual liens. See 207 B.R. at 184 (Section 815.18(12) "simply provides that property subject to a consensual lien may not be claimed as exempt." (quoting 202 B.R. at 749)); see also 202 B.R. at 750 (Section 815.18(12) "defines or qualifies the Wisconsin exemptions in a way that precludes debtors from claiming the property as exempt.").

The decision in this case disagrees with both of these statutory constructions.

a. Ehlen*'s method of construing the Bankruptcy Code conflicts with decisions of the Supreme Court and the Seventh Circuit.*

The *Ehlen* decisions' conclusion that §522(f)(3)(B)'s avoidance trigger applies only where state law refers explicitly to lien "avoidance" is based on legislative history rather than a fair reading of the text. Both *Ehlen* courts relied on a written statement submitted by the American Bankers Association to the House of Representatives Judiciary Committee's Subcommittee on Economic and Commercial Law when the subcommittee was considering what became the Bankruptcy Reform Act of 1994. 207 B.R. at 185; 202 B.R. at 748. As the *Ehlen* bankruptcy-court decision stated in its more extensive discussion:

> This portion of § 522(f)(3)(B) was added specifically to benefit Texas lenders, although it likely applies to all debtors similarly situated. Texas provides debtors with a "personal property exemption" in an aggregate value of $60,000.00 per family, or $30,000.00 per individual debtor. Despite the generous dollar amount of this exemption, it is limited by the following provision:
>
>> Personal property, unless precluded from being encumbered by other law, may be encumbered by a security interest . . . or . . . lien fixed by other law, *and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.*
>
> This is the type of state provision Mr. Corwin [of the American Bankers Association] and the creditors' groups contemplated when they proposed the addition of the second phrase in § 522(f)(3)(B).

202 B.R. at 749 (citations omitted) (remaining omissions in original); see also 207 B.R. at 185.

Based on this acknowledged "interest group statement", the *Ehlen* courts reasoned that §522(f)(3)(B)'s lien-avoidance prohibition "was directed specifically at Texas law". 207 B.R. at 185; 202 B.R. at 749; see also *In re Zimmel*, 185 B.R. 786, 794 (Bankr. D. Minn. 1995) ("The second alternative application described in 11 U.S.C. § 522(f)(3)(B), where state law 'prohibits avoidance of a consensual lien on property

otherwise eligible to be claimed as exempt property,' specifically targets Texas law."). Since Wisconsin's §815.18(12), unlike the Texas statute, contains "no reference to lien avoidance", the *Ehlen* courts ruled §522(f)(3)(B) inapplicable. 202 B.R. at 749; 207 B.R. at 184.

This legislative-history approach to interpreting the Bankruptcy Code is one that the Supreme Court and the Seventh Circuit have repeatedly renounced. See, e.g., *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012) ("The Bankruptcy Code standardizes an expansive (and sometimes unruly) area of law, and it is our obligation to interpret the Code clearly and predictably using well established principles of statutory construction."); *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004) ("We should prefer the plain meaning since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history."); *Bank of Am. Nat'l Tr. and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 459 (1999) (Thomas, J., concurring in judgment) ("Our precedents make clear that an analysis of any statute, including the Bankruptcy Code, must not begin with external sources, but with the text itself."); *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 749 (7th Cir. 2013) ("We apply the text—which both Houses of Congress approved and the President signed—not themes from a history that was neither passed by a majority of either House nor signed into law."). Moreover, the *Ehlen* courts' legislative-history analysis relies solely on an interest-group statement—a type of statement that the Supreme Court has refused to consider even when interpreting an ambiguous statute. See, e.g., *Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986) ("We acknowledge that a few comments in the hearings and the Bankruptcy Laws Commission Report may suggest that the language bears the interpretation adopted by the Second Circuit. But none of those statements was made by a Member of Congress, nor were they included in the official Senate and House Reports. We decline to accord any significance to these statements.").

b. *The* Ehlen *decisions' construction of Wisconsin law is contrary to Wisconsin's principles of statutory construction.*

The Wisconsin Supreme Court's approach to statutory construction is similar to that of the United States Supreme Court. When interpreting Wisconsin statutes the Wisconsin Supreme Court "begins with the language of the statute. If the meaning of the statute is plain, [it] ordinarily stop[s] the inquiry." *State ex rel. Kalal v. Cir. Ct. for Dane Cty.*, 681 N.W.2d 110, 124 (Wis. 2004) (quoting *Seider v. O'Connell*, 612 N.W.2d 659, 669 (Wis. 2000)). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*

The *Ehlen* courts' reading of Wisconsin Statutes §815.18(12) ignores that section's full text and the context provided by other sections of Wisconsin's exemption statute. Contrary to those courts' assertion that §815.18(12) "simply provides that property subject to a consensual lien may not be claimed as exempt", 207 B.R. at 184 (quoting 202 B.R. at 749), that section's plain text provides that a debtor cannot claim property as exempt "against . . . a holder of a . . . consensual . . . lien." Moreover, §815.18(2)(h), rather than §815.18(12), defines "exempt". Section 815.18(2)(h) states, "'Exempt' means free from any lien obtained by judicial proceedings and is not liable to seizure or sale on execution or on any provisional or final process issued from any court, or any proceedings in aid of court process."

Section 815.18(2)(h) and §815.18(12) have a common but not identical function. Section 815.18(2)(h)'s definition of "exempt" makes Wisconsin-law exemptions applicable only to judicial liens and processes. Section 815.18(12)'s limitation prohibits using a Wisconsin-law exemption on "property otherwise exempt" (that is, exempt as defined by §815.18(2)(h)) against a consensual (or statutory) lien on that property.

Section 815.18(12)'s text—"No property otherwise exempt may be claimed as exempt . . . against the claim or interest of a holder of . . . any consensual . . . lien"—

differs little from that of the Texas statute on which the *Ehlen* courts focused. The Texas statute stated, "Personal property . . . may be encumbered by a security interest . . . or . . . lien fixed by other law, and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter." 207 B.R. at 184 (omissions in original) (quoting Tex. Prop. Code Ann. §42.002(b) (West 1995)). Wisconsin law thus both restricts the application of exemptions to judicial-collection processes by the definition of "exempt" in §815.18(2)(h) and further limits the use of exemptions against consensual liens in §815.18(12). Nothing about this belt-and-suspenders approach to preserving consensual liens from exemption claims suggests that Wisconsin, like Texas, does anything other than prohibit debtors from avoiding liens based on the provisions of the state's exemption laws.

Neither *Ehlen* decision suggests a contrary view of Wisconsin exemption law. And neither decision explains why §522(f)(3)'s cap should not apply to Wisconsin's $15,000 exemption for the same reasons as Texas's $30,000 exemption, except that the word "avoidance" does not appear in Wisconsin Statutes §815.18(12).[1]

**B**

**1. The appeal involves an important Bankruptcy Code issue.** According to debtor's experienced counsel, the *Ehlen* decisions effectively have served as the governing "law" on avoiding liens impairing Wisconsin exemptions under §522(f)(3).

---

[1] Properly understood, Wisconsin Statutes §815.18(12)'s prohibition on claiming an exemption against a consensual lien makes *Zimmel* inapposite. *Zimmel*, on which the *Ehlen* courts relied, concluded that Minnesota exemption law did not prohibit the avoidance of consensual liens for purposes of 11 U.S.C. §522(f)(3)(B). 185 B.R. at 792–95. *Zimmel* explained that under Minnesota law "exemptions apply only to a debtor's interest in the property" and "do not apply to consensual liens." *Id.* at 792–93 (discussing *Moyer v. Int'l Bank*, 404 N.W.2d 274 (Minn. 1987)). *Zimmel* further explained that Minnesota exemption "law is silent regarding avoidance of consensual liens on property otherwise eligible to be claimed as exempt property." *Id.* at 793. In contrast, Wisconsin exemption law vests exemptions in property owned by the debtor without regard to whether it is encumbered by a lien: "The debtor's interest in or right to receive the following property is exempt". Wis. Stat. §815.18(3). And, as explained above, §815.18(12) of Wisconsin exemption law provides that a debtor cannot employ an exemption in property to defeat a consensual lien.

Debtor's counsel reported that creditors with a non–purchase money, non-possessory security interest in property subject to a state exemption typically capitulate and allow debtors to subordinate those creditors' interests to the full exemption amount when shown the *Ehlen* decisions. CM-ECF Doc. No. 61, at 8:15–:29 (audio file). As counsel remarked at argument, "I've done many of these [lien] avoidance motions and . . . [creditors have] never . . . raised [the §522(f)(3) cap] as an issue." CM-ECF Doc. No. 97, at 19:24–20:1 (transcript).

**2. The appeal presents an appropriate vehicle for the court of appeals to afford debtors and lenders needed certainty about the extent to which debtors can use §522(f)(1) to avoid liens up to the full Wisconsin exemption amount.** The court's decision in this case has likely created uncertainty for debtors and secured lenders in Wisconsin. That uncertainty may at least in part motivate the appeal from this court's decision—an appeal filed on the debtor's behalf by one of the leading debtor-side bankruptcy firms in Wisconsin.

This uncertainty is unlikely to be remedied by a district-court decision. A decision by the district court will simply change a 2–2 split in non-precedential decisions about how to apply 11 U.S.C. §522(f) to Wisconsin law to a 3-2 split. If the district court affirms, there will be contradictory decisions in Wisconsin's two federal districts about whether Wisconsin exemption law triggers the Bankruptcy Code's lien-avoidance cap. And, regardless of which way the district court decides the appeal, the decision will not yield precedent controlling how bankruptcy and district court judges must rule in the future.

Additionally, another case presenting the issue is unlikely to reach the court of appeals soon. The small stakes that are at issue in each individual lien-avoidance dispute in comparison to litigating an appeal will likely lead most lienholders to compromise or capitulate rather than contest the matter through multiple courts. The difference between the debtor's ability to avoid the lien up to the full $15,000 exemption

and the $6,425 cap only arises when the debtor has equity in the encumbered assets in excess of $6,425. And, if the value of the collateral far exceeds $15,000, the lienholder may be content with foregoing the dispute over the cap's application and avoiding the litigation costs of that exercise. In either instance, one expects that the litigation costs of pursuing a precedential ruling will typically far exceed the amount in dispute.

Creditors who can expect to encounter the issue repeatedly might conclude that a definitive ruling justifies the cost of pursuing it. But any particular case is unlikely to reach the court of appeals unless both parties have sufficiently strong institutional or personal stakes to suffer the long road from Milwaukee or Madison to Chicago. Apparently, since 1997, when *Ehlen* disagreed with *Parrish*, no case before this one has yielded both a trial-court opinion and an appeal. This should not leave one sanguine about cases reaching the court of appeals after having to stop in the district court.

Yet this case presents an important question about the Bankruptcy Code's interaction with Wisconsin law that likely has practical effects that far exceed the number of adjudicated disputes. The question, therefore, would be better answered by the court of appeals. And, because these parties' dispute is limited solely to the legal question of whether the use of Wisconsin exemptions triggers §522(f)(3)'s cap on lien avoidance, this case presents an optimal vehicle for providing an answer.

**3. The court of appeals, but not the district court, can ask the Wisconsin Supreme Court whether Wisconsin law prohibits the avoidance of consensual liens.**

The courts in *Ehlen* and *Parrish* both found Wisconsin Statutes §815.18(12) unclear. See *Parrish*, 186 B.R. at 248 (noting §815.18(12)'s "opacity and its confusing disjunctions"); *Ehlen*, 207 B.R. at 183 (*Parrish* "is correct that [Wis. Stat.] § 815.18(12) is not a model of clarity".); *Ehlen*, 202 B.R. at 749 ("This Court agrees [with *Parrish*] that the Wisconsin provision [Wis. Stat. §815.18(12)] is muddled and vague."). While this court ruled that Wisconsin Statutes §815.18(12)'s prohibition on claiming a Wisconsin exemption against consensual liens is clear from the text, §815.18(2)(h)'s definition of "exempt" to mean

free from judicial liens (rather than consensual or statutory liens) serves a similar function. Even if arguably unnecessary, §815.18(12)'s statement that exemptions cannot be claimed against consensual liens can be understood as a prophylactic provision that affords lenders greater assurance that debtors cannot use exemptions to undo agreements affording those lenders rights to replevin a debtor's property for repayment of debt secured by that property.

In all events, no Wisconsin appellate court has addressed Wisconsin Statutes §815.18(12). If greater clarification about the meaning of that section would assist in answering the question presented, the court of appeals could certify the question to the Wisconsin Supreme Court. See *Winebow, Inc. v. Capitol-Husting Co. Inc.*, 867 F.3d 862, 870 (7th Cir. 2017); see also Cir. R. 52(a). But, while the Wisconsin Supreme Court will entertain questions of Wisconsin law certified by the court of appeals, it will not similarly accept a certification from a federal district court. Wis. Stat. §821.01. This too favors direct review.

* * *

For all of these reasons, this court will enter a separate order certifying the debtor's appeal of the August 2, 2018 order for direct appeal to the court of appeals under 28 U.S.C. §158(d)(2) and Federal Rule of Bankruptcy Procedure 8006(e).

August 22, 2018

G. Michael Halfenger
United States Bankruptcy Judge

**Exhibit A**

Debtor's notice of appeal with the bankruptcy court's August 2, 2018 order

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                              Case No. 17-22036-gmh

     Stanley B. Immel,                              Chapter 13

                Debtor.

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

**Part 1:**        **Identify the appellant**

1. Name of appellant:
   Stanley B. Immel

2. Position of appellant in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☒ Debtor
   ☐ Creditor
   ☐ Trustee
   ☐ Other (describe) _____

**Part 2:**        **Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:

   The Bankruptcy Court, Eastern District of Wisconsin, entered an order disallowing a provision in the Debtor's chapter 13 plan avoiding State Bank of Newburg's lien to the extent the lien avoidance exceeded $6,425.00. The order further required the Debtor to remit to State Bank of Newburg the proceeds of equipment sales that exceeded $6,425.00.

2. State the date on which the judgment, order, or decree was entered:

   August 2, 2018.

**Part 3:**        **Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses and telephone numbers of their attorneys (attach additional pages if necessary):

| 1. Party: | Attorneys: |
|---|---|
| State Bank of Newburg | John M. Gallo<br>1650 9th Avenue, PO Box 104<br>Grafton, WI 53024-0104<br>(262) 377-0600 |
| 2. Party: | Attorney: |
| Rebecca Garcia, Chapter 13 Trustee | Rebecca Garcia<br>PO Box 3170<br>Oshkosh, WI 54903-3170<br>(920) 231-2150 |

**Part 4:** **Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:** **Sign below**

/s Nicholas Hahn_____          Date:__08/10/2018_____
Nicholas Hahn, Attorney for Appellant

Nicholas Hahn
Steinhilber Swanson, LLP
107 Church Avenue
Oshkosh, WI 54901
Tel: (920) 235-6690; Fax: (920) 426-5530



THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 2, 2018

G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Stanley B. Immel,               Case No. 17-22036-GMH

          Debtor.                  Chapter 13

## ORDER ON LIEN AVOIDANCE

Based on the court's August 2, 2018 decision on lien avoidance,

IT IS ORDERED that State Bank of Newburg's objection to the lien-avoidance provision of the debtor's modified plan is sustained. The debtor can only avoid the Bank's lien up to $6,425.

IT IS FURTHER ORDERED that the debtor must turn over all equipment sale proceeds in excess of $6,425 to State Bank of Newburg within 14 days of the date of this order.

#####

**Exhibit B**

The bankruptcy court's August 2, 2018 decision on lien avoidance

In re:

Stanley B. Immel,                     Case No. 17-22036-GMH

Debtor.                               Chapter 13

## DECISION ON LIEN AVOIDANCE

Section 522(f) of the Bankruptcy Code authorizes debtors to avoid most liens on certain types of exempt property, including a "nonpossessory, nonpurchase-money security interest in" implements and tools of the trade of the debtor. 11 U.S.C. §522(f)(1)(B)(ii). The Code cabins that authority when a debtor uses state-law exemptions. If a debtor elects state-law exemptions for implements and tools of the trade under the law of a state that "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt", then the debtor may not avoid the lien "to the extent the value of such implements . . . [and] tools of the trade . . . exceeds $6,425." 11 U.S.C. §522(f)(3). The question presented is whether Wisconsin law "prohibits avoidance of a consensual lien on property" for purposes of §522(f)(3)'s lien-avoidance cap.

I

The debtor has claimed certain farm equipment as exempt under Wisconsin statute §815.18(3)(b). CM-ECF Doc. No. 1 at 19; see also Wis. Stat. §815.18(3)(b) (allowing a debtor to exempt up to $15,000 for "[e]quipment, inventory, farm products, and professional books used in the business of the debtor"). The debtor filed a modified chapter 13 plan proposing to sell farm equipment in which he has claimed the $15,000

equipment exemption under Wisconsin law. CM-ECF Doc. No. 55. Under the proposed modified plan, the debtor will retain the first $15,000 of the net sale proceeds and avoid State Bank of Newburg's lien on the equipment up to the $15,000 exemption. CM-ECF Doc. No. 55 at 2. The Bank objects, contending that the debtor can only avoid its lien up to §522(f)(3)'s $6,425 cap. CM-ECF Doc. No. 56.

The court, with the parties' agreement, approved the plan modification subject to a later determination of the extent to which §522(f) authorizes avoidance of the Bank's lien. The court directed the debtor to hold the first $15,000 of net proceeds in his attorney's client trust account pending this court's resolution of that issue. CM-ECF Doc. No. 67-2.

The debtor does not dispute that the Bank has a perfected, first-priority security interest in substantially all of the debtor's personal property, including the debtor's farm equipment. And the Bank does not contest the debtor's claim to a $15,000 exemption in the farm equipment under Wisconsin statute §815.18(3)(b). CM-ECF Doc. No. 1 at 19. Also, neither party disputes that the farm equipment constitutes "implements" or "tools of the trade" of the debtor for purposes of §522(f)(3). The parties only disagree about the application of §522(f)(3)'s $6,425 cap.

II

A

The §522(f)(3) cap on lien avoidance applies when state exemption law prohibits the debtor from avoiding "a consensual lien on property otherwise eligible to be claimed as exempt property". 11 U.S.C. §522(f)(3)(B).[1] Wisconsin exemption law

---

[1] Section 522(f)(3) of title 11 provides as follows (with added emphasis):
In a *case in which State law that is applicable to the debtor*—
    (A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
    (B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property[,] or *prohibits avoidance of a consensual lien on property otherwise eligible*

expressly limits a debtor's use of an exemption against a consensual or statutory lien: "***No property otherwise exempt may be claimed as exempt in any proceeding*** brought by any person to recover the whole or part of the purchase price of the property or ***against the claim or interest of a holder of a security interest***, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage ***or any consensual*** or statutory ***lien***." Wis. Stat. §815.18(12) (emphasis added). This limitation on using an exemption "against . . . a holder of . . . a consensual . . . lien" prohibits a debtor from using Wisconsin exemptions to avoid or otherwise defeat a consensual lien.

Wisconsin law thus satisfies §522(f)(3)(B), and the debtor can only use §522(f) to avoid the Bank's consensual lien up to $6,425. The Bank is therefore entitled to receive all equipment-sale proceeds in excess of that amount. See *In re Parrish*, 186 B.R. 246 (Bankr. W.D. Wis. 1995).

B

In arguing to the contrary, the debtor relies on decisions issued by the district court and bankruptcy court in *In re Ehlen*. Both *Ehlen* decisions conclude that Wisconsin exemption law does not prohibit avoidance of consensual liens for purposes of §522(f)(3)'s lien-avoidance cap. *United States v. Ehlen (In re Ehlen)*, 207 B.R. 179 (W.D. Wis. 1997), *aff'g In re Ehlen*, 202 B.R. 742 (Bankr. W.D. Wis. 1996).

The *Ehlen* decisions reason that to trigger §522(f)(3)(B)'s prohibits-avoidance provision a state law must "do more than limit what property can be claimed as

---

*to be claimed as exempt property*; **the debtor may not avoid the fixing of a lien** on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor **to the extent the value** of such implements, professional books, tools of the trade, animals, and crops **exceeds $6,425.**

exempt; it must prohibit lien avoidance explicitly". 207 B.R. at 184; 202 B.R. at 749–50. They read Wisconsin statute §815.18(12) as "simply provid[ing] that property subject to a consensual lien may not be claimed as exempt." 207 B.R. at 184 (quoting 202 B.R. at 749) (internal quotation marks omitted).

The *Ehlen* courts' reading of §815.18(12) ignores its full text and the context provided by other sections of the exemption statute, contrary to Wisconsin Supreme Court teaching on interpreting Wisconsin statutory law. See *State ex rel. Kala v. Circuit Court for Dane Cty.*, 681 N.W.2d 110, 123–24 (Wis. 2004). In addition to the fact that §815.18(12) provides that property cannot be claimed as exempt "against" the holder of a consensual lien, §815.18(2)(h)'s definition of "exempt" does what the *Ehlen* courts attribute to §815.18(12): "'Exempt' means free from any lien obtained by judicial proceedings and is not liable to seizure or sale on execution or on any provisional or final process issued from any court, or any proceedings in aid of court process." Wis. Stat. §815.18(2)(h). Again, §815.18(12) by its terms goes further. It prohibits claiming an exemption in property that is "otherwise exempt"—that is, exempt from judicial process as stated in §815.18(2)(h)—"against . . . any consensual . . . lien." Wis. Stat. §815.18(12). So, contrary to the *Ehlen* courts' conclusions, §815.18(12) does not "'simply provide[] that property subject to a consensual lien may not be claimed as exempt.'" 207 B.R. at 184 (quoting 202 B.R. at 749). Section 815.18(12) prohibits using an exemption either defensively against a creditor collecting on a consensual lien or offensively to avoid a consensual lien on exempt property.

The *Ehlen* decisions do not propose a different understanding of how Wisconsin exemption law operates. Instead, those decisions suggest that only state laws that use the term "lien avoidance" or some similar phrase satisfy §522(f)(3)(B)'s prohibits-avoidance provision. The *Ehlen* courts base this conclusion on an inference of

congressional intent. They divine this intent from a written statement submitted by the American Bankers Association to the House of Representatives Judiciary Committee's Subcommittee on Economic and Commercial Law when the subcommittee was considering what became the Bankruptcy Reform Act of 1994, which added §522(f)(3)(B) to title 11. *In re Ehlen*, 202 B.R. at 748–49 (discussing *Bankruptcy Reform: Hearing Before the Subcomm. on Econ. and Commercial Law of the H. Comm. on the Judiciary*, 103d Cong. (1994) (statement of Philip S. Corwin, Dir. and Counsel, Operations and Retail Banking, Am. Bankers Ass'n) ("*Am. Bankers Ass'n Statement*")); see also 207 B.R. at 185 (explaining the bankruptcy court's conclusion that §522(f)(3)(B) did not apply to Wisconsin based on the American Bankers Association's statement).

The American Bankers Association's statement in part championed proposed changes to §522(f) intended to mitigate the effect of *Owen v. Owen*, 500 U.S. 305 (1991). *Owen* overruled lower-court decisions that had made §522(f) lien avoidance unavailable when the debtor used exemptions under state law that defined exempt property as excluding property encumbered by consensual liens. 500 U.S. at 313–14. After *Owen*, debtors in states with unlimited or large tools-of-the-trade exemptions (for example) could use §522(f) to avoid non-purchase-money consensual liens in amounts that far exceeded the modest exemption amounts provided under federal law. The American Bankers Association's statement observed that a proposed amendment to §522(f) that capped the avoidance amount when state law permitted an unlimited exemption would not address a perceived detrimental effect of §522(f) lien avoidance on agricultural lending in Texas, which had a large, but not unlimited, exemption. In proposing a further limitation, the American Bankers Association noted, "Texas law . . . permits preexisting lien encumbrances on otherwise exemptible property", but, as a result of *Owen*, "Texas lenders considering a loan application from a farmer or small business

today can no longer rely on state law to preserve their lien in bankruptcy". *Am. Bankers Ass'n. Statement*, 103d Cong. at 220–21 (emphasis omitted). In order to protect these lenders, the statement "urge[d] the Committee to include" in the bankruptcy-reform legislation text that became the prohibits-avoidance clause of §522(f)(3)(B). *Id.* at 221. From this legislative-history snippet *Ehlen* infers that the prohibits-avoidance clause of §522(f)(3)(B) only applies to debtors similarly situated to those under Texas law because, "[t]his portion of § 522(f)(3)(B) was added specifically to benefit Texas lenders". 202 B.R. at 749; see also 207 B.R. at 184–85 (recounting the bankruptcy court's conclusion on the legislative history).

But "[s]tatutes often are written more broadly than their genesis suggests." *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 749 (7th Cir. 2013). And, since *Ehlen*, the Supreme Court has repeatedly endeavored to construe the Bankruptcy Code based on its text without resort to legislative history. See, e.g., *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text".); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations omitted); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 459 (1999) (Thomas, J., concurring) ("Our precedents make clear that an analysis of any statute, including the Bankruptcy Code, must not begin with external sources, but with the text itself."). In fact, the Supreme Court has "decline[d] to accord any significance to [ ] statements", like the American Bankers Association statement relied on by *Ehlen*, that are neither "made by a Member of Congress, nor . . . included in the official Senate and House Reports." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) (quoting *Kelly v. Robinson*, 479 U.S. 36, 51 n.13 (1986)). In applying

the Bankruptcy Code, this court must "apply the text—which both Houses of Congress approved and the President signed—not themes from a history that was neither passed by a majority of either House nor signed into law." *Peterson*, 729 F.3d at 749.

Section 522(f)(3)(B)'s reference to state statutes that "prohibit[] avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property" is not so ambiguous as to justify *Ehlen*'s resort to legislative history to render §522(f)(3)(B)'s prohibit-avoidance provision inapplicable to Wisconsin law. Again, neither of the *Ehlen* decisions suppose that Wisconsin law authorizes debtors to avoid consensual liens on exempt property. Nor do they suggest that the effect of §815.18(12) would be any different if its prohibition on using a claim of exemption "against" a consensual lien were replaced with a prohibition on using a claim of exemption "to avoid" a consensual lien.

Finally, the debtor here urges the court to adopt the *Ehlen* bankruptcy court's reasoning that "an expansive reading of § 522(f)(3) is not in keeping with the intent of § 522(f) itself." CM-ECF Doc. No. 70 at 7 (quoting 202 B.R. at 750). Section 522(f), reasoned the *Ehlen* bankruptcy court, "was adopted to further the 'fresh start' policy of the Code and to assure that debtors have a measure of financial stability as they proceed forward with their lives." 202 B.R. at 750.

"Any fresh-start policy", however, "must balance the gains from new beginnings against the costs of making it harder for lenders to collect. The more difficult collection becomes, the fewer assets are available to secure loans, the costlier is credit." *In re Erickson*, 815 F.2d 1090, 1094 (7th Cir. 1987). What the Seventh Circuit explained about construing the scope of Wisconsin's former exemption law applies equally to the debtor's suggestion that the Bankruptcy Code's fresh-start policy supports circumscribing §522(f)(3)(B). Section 522(f)(3)(B) reflects the balance Congress struck on

allowing debtors to avoid consensual liens as part of their fresh start. Congress directed that when a state prohibits the avoidance of consensual liens on otherwise exempt property, debtors' ability to avoid consensual liens that impair exemptions under that state's law is subject to §522(f)(3)'s cap. As explained above, Wisconsin law contains that prohibition. The debtor's lien-avoidance authority is limited accordingly.

III

The court will enter a separate order that (a) sustains State Bank of Newburg's objection to the lien-avoidance provision of the plan, (b) declares that the debtor can only avoid the Bank's lien up to $6,425, and (c) directs the debtor to turn over all equipment sale proceeds in excess of that amount to State Bank of Newburg.

August 2, 2018

G. Michael Halfenger
United States Bankruptcy Judge

## Exhibit C

*United States v. Ehlen (In re Ehlen)*, 207 B.R. 179 (W.D. Wis. 1997)

207 B.R. 179
United States District Court,
W.D. Wisconsin.

In re Steven F. EHLEN and Beth L. Ehlen, Debtors.
UNITED STATES of America, Creditor–Appellant,
v.
Steven F. EHLEN and Beth
L. Ehlen, Debtors–Appellees.

No. 96–C–0981–C.
|
April 7, 1997.

**Synopsis**

Chapter 7 debtor-farmers moved to avoid creditor's lien as nonpossessory, nonpurchase money security interest in tools of the trade to full extent of state exemption. Creditor opposed motion, contending that debtors could not avoid more than $10,000 of its security interest. The Bankruptcy Court, Thomas S. Utschig, J., 202 B.R. 742, granted motion. Creditor appealed. The District Court, Crabb, J., held that statutory cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade did not apply, and, therefore, debtors were entitled to avoid lien on farm implements to maximum amount of exemption permitted under state law.

Affirmed.

West Headnotes (11)

**[1]** **Bankruptcy**
⚖ Operation and Effect

**Bankruptcy**
⚖ Effect as to Securities and Liens

Ordinarily, liens and other interests in property survive bankruptcy, and can be enforced on exempt property, including homestead property.

Cases that cite this headnote

**[2]** **Bankruptcy**

⚖ Validity and Effect of Opt-Out Legislation

Under Bankruptcy Code provision governing exemptions, debtor has choice between federal exemptions set out in Bankruptcy Code and exemptions provided under state law, unless debtor is resident of state that has opted out of federal exemptions. Bankr.Code, 11 U.S.C.A. § 522(b, d).

1 Cases that cite this headnote

**[3]** **Bankruptcy**
⚖ Operation and Effect

Under Bankruptcy Code provision allowing avoidance of liens on otherwise exempt property, debtor can avoid certain liens on otherwise exempt property, bring property into bankruptcy estate, and then exempt it from estate. Bankr.Code, 11 U.S.C.A. § 522(f).

1 Cases that cite this headnote

**[4]** **Bankruptcy**
⚖ Property Exempt

Only property that comes within bankruptcy estate may be exempted from it. Bankr.Code, 11 U.S.C.A. § 522.

Cases that cite this headnote

**[5]** **Bankruptcy**
⚖ Liens Avoidable

Bankruptcy Code provision allowing avoidance of liens on otherwise exempt property permits debtor to wipe out interest that creditor has in particular property if debtor's interest in that property would be exempt but for existence of creditor's lien or interest. Bankr.Code, 11 U.S.C.A. § 522(f).

1 Cases that cite this headnote

**[6]** **Bankruptcy**
⚖ Tools of Trade

Tools of the trade such as debtor's farm machinery are covered by Bankruptcy Code provision allowing avoidance of liens on otherwise exempt property, and nonpossessory, nonpurchase money security interests are included in interests to which provision applies. Bankr.Code, 11 U.S.C.A. § 522(f).

Cases that cite this headnote

**[7]**     **Bankruptcy**
    Tools of Trade

Although subsection of Bankruptcy Code provision imposing cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade makes general reference to unlimited exemptions under state law, this subsection has to be construed in context of entire provision. Bankr.Code, 11 U.S.C.A. § 522(f)(3)(B).

1 Cases that cite this headnote

**[8]**     **Bankruptcy**
    Tools of Trade

For purposes of Bankruptcy Code provision imposing cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade, in determining whether state law permits debtor to claim exemptions without limitation in amount, court will look at whether state exemption law places limit on amount of exemption at issue. Bankr.Code, 11 U.S.C.A. § 522(f)(3)(B).

Cases that cite this headnote

**[9]**     **Bankruptcy**
    Tools of Trade

Bankruptcy Code provision imposing cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade did not apply to Chapter 7 debtor-farmers, and debtors could avoid lien on their farm implements

to full extent of exemption permitted under Wisconsin law, given that Wisconsin exemption statute placed limit on amount of exemption for tools of trade, and did not explicitly preclude avoidance of consensual liens. Bankr.Code, 11 U.S.C.A. § 522(f)(3); W.S.A. 815.18.

Cases that cite this headnote

**[10]**     **Bankruptcy**
    Operation and Effect

Lien avoidance is distinguishable from exemption claim; they are distinct processes, with lien avoidance claim coming first and exemption claim coming second.

Cases that cite this headnote

**[11]**     **Bankruptcy**
    Tools of Trade

For state law to prohibit debtor from avoiding consensual liens, so as to invoke Bankruptcy Code provision imposing cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade, state law must do more than limit what property can be claimed as exempt, and must actually prohibit lien avoidance explicitly. Bankr.Code, 11 U.S.C.A. § 522(f)(3)(B).

1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*181** Richard D. Humphrey, Asst. U.S. Attorney, Madison, WI, for U.S.

Howard D. White, White, Welter & Schilling, Eau Claire, WI, for Steven F. Ehlen and Beth L. Ehlen.

OPINION AND ORDER

CRABB, District Judge.

Case 17-22036-gmh    Doc 99    Filed 08/22/18    Page 30 of 48

This is an appeal from a final order of the United States Bankruptcy Court for the Western District of Wisconsin granting the motion of debtors-appellees Steven and Beth Ehlen to avoid a lien on their farm implements in the amount of $7500 for each debtor, rather than the $5000 the government contends should be the maximum amount each debtor can avoid. *In re Ehlen,* 202 B.R. 742 (Bankr.W.D.Wis.1996). At issue is the interplay of 11 U.S.C. § 522(f)(3) and the Wisconsin laws on exempt property.

Jurisdiction is present. 28 U.S.C. § 158(a). There are no facts in dispute. The bankruptcy court's decision is a pure question of law that is reviewed de novo. *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994); Bankruptcy Rule 8013. The factual background of the case follows, drawn from the bankruptcy judge's finding of facts and conclusions of law.

## FACTUAL BACKGROUND

Debtors-appellees Steven and Beth Ehlen filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. In their bankruptcy schedules, debtors listed a number of farm implements, claiming these items as exempt under Wis. Stat. § 815.18(3)(b). The United States holds a blanket nonpossessory, nonpurchase money security interest in this equipment, through the Farm Service Agency.

On or about January 2, 1996, debtors moved to avoid appellant's security interest in the machinery listed in their bankruptcy schedules. The United States objected to the motion, arguing that the value of the items exceeded the $15,000 exemption for tools of the trade to which appellees are entitled under Wisconsin law. Alternatively, the United States contended that the $5,000 cap per debtor specified in § 522(f)(3) of the Bankruptcy Code applied to debtors' lien avoidance powers in farm implements or tools of trade under § 522(f)(1), so that debtors were entitled to avoid no more than $10,000 of appellant's lien.

On June 6, 1996, the bankruptcy court approved the parties' stipulation that the value of the items of machinery and equipment at issue was $22,820. On October 16, 1996, the court granted the debtors' motion to avoid appellant's lien to the full extent of the Wisconsin exemption, or $15,000.

## OPINION

**[1]** The Bankruptcy Code allows the states to define what property a debtor may exempt for himself and his dependents from the bankruptcy estate that will be distributed to his creditors. 11 U.S.C. § 522(b); *Owen v. Owen,* 500 U.S. 305, 306, 111 S.Ct. 1833, 1834, 114 L.Ed.2d 350 (1991). The Code also provides that the debtor can eliminate certain liens encumbering exempt property. 11 U.S.C. § 522(f); *Owen,* 500 U.S. at 306, 111 S.Ct. at 1836. Ordinarily, such liens and other interests in property survive bankruptcy, *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991), and can be enforced on exempt property, including homestead property. In § 522(f), however, Congress has made provision for debtors to avoid the fixing of some liens on property that they could have exempted from the bankruptcy estate (and kept from their creditors) had it not been for the lien. The provision is not without its critics. The Court of Appeals for the Seventh Circuit has pointed out that it provides **\*182** no benefit to farmers generally to permit them to avoid liens to which they have consented; rather, it increases the cost of borrowing, since lenders know that debtors can control the timing of bankruptcy and "use it to take maximum advantage of the exemptions." *In re Patterson,* 825 F.2d 1140, 1142 (7th Cir.1987). Regardless of the economic consequences, Congress has determined that some lien avoidance should be permitted to persons filing bankruptcy, in order to help them make a fresh start after the proceeding is complete.

**[2]** **[3]** **[4]** **[5]** **[6]** Under § 522(b), a debtor has a choice between the federal exemptions set out in subsection (d) of § 522 and the exemptions provided under state law, unless the debtor is the resident of a state that has opted out of the federal exemptions, which is not the case in Wisconsin. *See generally* Lawrence B. King, *Collier on Bankruptcy,* ¶ 522.01, at 522 10 to 522 12 & n. 2 (15th ed.1996) (providing overview of § 522 and listing opt-out states). Under subsection (f) of § 522, the debtor can avoid certain liens on otherwise exempt property, bring the property into the bankruptcy estate and then exempt it from the estate. This apparently convoluted procedure is necessary because only property that comes within the bankruptcy estate may be exempted from it. *Owen,* 500 U.S. at 308, 111 S.Ct. at 1835. "Described in its simplest terms, section 522(f) permits a debtor to wipe out the

Case 17-22036-gmh    Doc 99    Filed 08/22/18    Page 31 of 48

interest in property has in particular property if the debtor's interest in that property would be exempt but for the existence of the creditor's lien or interest." 4 King, *supra,* ¶ 522.11 at 522 74. Tools of the trade such as the debtors' farm machinery are covered by § 522(f) and nonpossessory, nonpurchase money security interests are included in the interests to which the statute applies.

Before 1994, it was clear that a Wisconsin debtor who filed a federal bankruptcy proceeding and chose the state exemptions could avoid a nonpossessory, nonpurchase money security interest in tools of the trade to the maximum amount of the exemption permitted under Wisconsin law (currently set at $7500 per debtor). *See In re Thompson,* 867 F.2d 416, 419 21 (7th Cir.1989); *In re Wink,* 137 B.R. 297, 300 (Bankr.W.D.Wis.1992). However, the passage of the Bankruptcy Reform Act of 1994 clouded the picture. Congress added paragraph 3 to § 522(f). This paragraph sets a $5000 per debtor limit on the avoidance of a lien such as the one at issue here in any case in which the state exemption law applicable to the debtor

(A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;

The basic idea of these rather clumsy paragraphs is that if the applicable state law fits one or the other of the two alternative conditions in both paragraphs, the debtor's lien avoidance is capped at $5000 per debtor for tools of the trade. In analyzing the provision, the bankruptcy court found as to subpart (A) that the second alternative condition was not applicable because Wisconsin has not opted out of the federal exemptions. However, Judge Utschig concluded that the debtors met the first alternative of subpart (A), because this provision was meant to apply to " 'cases in which the debtor has voluntarily chosen the State exemptions.' " *Ehlen,* 202 B.R. at 747 (citing 140 Cong. Rec. H10,764 (daily ed. Oct. 4, 1994), H.R.Rep. No. 835, 103d Cong., 2d Sess. 41, 42 (1994)). As Judge Utschig noted, this is the only logical way to interpret the phrase, "voluntarily waive

a right to claim exemptions under subsection (d)." To read it literally would render the phrase meaningless, since there is little if any likelihood that any state could permit a debtor to waive his right to claim exemptions when § 522(e) makes waivers of exemptions unenforceable. Neither party challenges this portion of the bankruptcy court's holding.

The real complications arise in interpreting the two alternative conditions of subpart (B). Judge Utschig found that the first alternative **\*183** was inapplicable. He looked to Wis. Stat § 815.18, which lists certain types of property exempt from creditors' claims, and subsection (3) (b), which contains a limitation of $7500 for each debtor on the exemption on tools of the trade. Consequently, Judge Utschig concluded, it cannot be said that state law permits the debtor to claim exemptions without limitation in amount, as the first alternative condition in subpart (B) of § 522(f)(3) requires.

**[7]  [8]  [9]**   The United States sees the matter differently. It argues that the first alternative condition is met because Wisconsin law does permit debtors to claim exemptions for some things such as child support or federal disability insurance in unlimited amounts. Although subsection (f) (3)(B) makes a general reference to unlimited exemptions under state law, it must be construed in context. *See Matter of Merchants Grain, Inc. By and Through Mahern,* 93 F.3d 1347, 1354 (7th Cir.1996) ("[W]e view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant."). Subsection (3) of § 522(f) was intended to limit a debtor's avoidance powers regarding state exemptions for certain tools of trade. Thus, it is reasonable to infer that when Congress addressed the applicability of the avoidance limits of § 522(f)(3) in subpart (B), it intended courts to consider whether the specific state exemption at issue was unlimited, not whether other unrelated exemptions might be unlimited. The bankruptcy court was correct in holding that the first alternative of subpart (B) is not applicable where, as here, state exemption law places a limit on the amount of the exemption at issue.

As to the second alternative of subparagraph (B), the United States contends that Wis. Stat. § 815.18(12) contains a prohibition of the avoidance of a consensual

lien on property that would otherwise be eligible for exemption. To understand this contention, it is necessary to review § 815.18, which is part of Chapter 815, relating to the execution of property to satisfy certain creditors' claims. Section 815.18 enumerates certain types of property that are exempt from creditors' claims, that is, "free from any lien obtained by judicial proceedings and ... not liable to seizure or sale on execution or on any provisional or final process issued from any court." In § 815.18(12), the subsection on which the government relies, the state imposes limits on exemptions, as follows:

> Limitations on exemptions. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

If this statute "prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property" as required under § 522(f)(3)(B), then the monetary cap in § 522(f)(3) applies and the bankruptcy court should have limited the debtors' lien avoidance to $10,000.

Aside from Judge Utschig's decision in this case and an opinion from the bankruptcy court for the District of Minnesota, *In re Zimmel,* 185 B.R. 786 (Bankr.D.Minn.1995) (holding § 522(f)(3) inapplicable under Minnesota exemption law), the only other published opinion addressing application of § 522(f)(3)(B) is Judge Martin's decision in *In re Parrish,* 186 B.R. 246 (Bankr.W.D.Wis.1995). The two Western District of Wisconsin bankruptcy judges seem to agree that under the second alternative in subpart (B), state law must expressly prohibit avoidance of the lien at issue. However, although Wis. Stat. § 815.18(12) does not mention lien avoidance, Judge Martin reads the statute as an express prohibition on avoidance of a consensual lien. *Parrish,* 186 B.R. at 248. Unfortunately, he does not explain the reasoning that leads to this conclusion, saying only that despite the Wisconsin statute's "opacity and its confusing

disjunctions," *Id.* at 248, it provides an express prohibition on lien avoidance. He is correct that § 815.18(12) is not a model of clarity but less persuasive when he reads it as prohibiting the avoidance of all consensual liens when it is more plausible to **\*184** read it as saying only that property subject to such liens cannot be the subject of a Wisconsin exemption claim.

[10] [11] I conclude that Judge Utschig's reading is correct, that is, that "[t]he Wisconsin statute simply provides that property subject to a consensual lien may not be claimed as exempt." *Ehlen,* 202 B.R. at 749. Section 522(f)(3)(B) talks of state law prohibiting the "avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property"; § 815.18 says nothing about avoidance of the lien but speaks only of prohibiting a debtor from claiming an exemption to the extent that otherwise exempt property is subject to a consensual lien. Lien avoidance is distinguishable from an exemption claim, as the Supreme Court made clear in *Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350. They are distinct processes: a lien avoidance claim comes first and an exemption claim comes second. *See id.* at 305, 111 S.Ct. at 1833 34 (lien avoidance allows a debtor to bring an interest into the estate that may then be claimed as exempt). In *Owen,* the Court found that a state exemption law that excepted property subject to certain liens did not affect a bankrupt's right to avoid such a lien under § 522(f), because federal bankruptcy law referred to those exemptions to which the debtor *"would have been"* entitled but for the lien at issue. *Id.* at 311 13, 111 S.Ct. at 1837 38. The Court held that the determination should begin with the question whether avoiding the lien would entitle the debtor to an exemption; if it would, then the lien could be avoided. *Id.* at 312 13, 111 S.Ct. at 1837 38 (lien avoidance proper if but for lien at issue debtor would be entitled to exemption of property as provided under state law). Put another way, to say that a consensual lien on otherwise exempt property may not be avoided is not the same thing as saying that otherwise exempt property subject to a consensual lien may not be claimed as exempt. Moreover, as Judge Utschig noted, if a state law that excepts consensual liens from debtors' exemption claims is the same thing under § 522(f)(3)(B)'s first alternative as a state law that prohibits a debtor from avoiding consensual liens under the second alternative, the second alternative would subsume the first, in contravention of the rules of statutory construction. *Ehlen,* 202 B.R. at 750. *See Matter of Merchants Grain,* 93 F.3d at 1354 (Congress's

words must be given effect within context of statute and without rendering any portion of statute superfluous or redundant). To give proper effect to the language of § 522(f)(3)(B), state law must do more than limit what property can be claimed as exempt; it must prohibit lien avoidance explicitly Wisconsin law does not. Thus, under a plain reading of the text, § 522(f)(3) is inapplicable to debtors' lien avoidance motion.

One aspect of this analysis gives pause: the anomaly of § 522(f)(3)' s reference to a state law prohibiting avoidance of a consensual lien. There is no apparent reason why a state property exemption scheme would refer to lien avoidance, a concept peculiar to federal bankruptcy. *See* 4 King, *supra,* ¶ 522.11[6][c], at 522 90 to 522 91 ("Few, if any [states], prohibit the avoidance of security interests, simply because state law has never dealt with the avoidance of liens."). However, both Judge Utschig and the Minnesota bankruptcy court addressed this concern, pointing out that at least one state, Texas, does prohibit lien avoidance explicitly in its exemption law. *Ehlen,* 202 B.R. at 749; *Zimmel,* 185 B.R. at 794. *See* Tex. Prop.Code. Ann. § 42.002(b) ("Personal property ... may be encumbered by a security interest ... or ... lien fixed by other law, and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.").

Even if the language of § 522(f)(3)(B) is ambiguous, both Judge Utschig and the Minnesota bankruptcy court noted that the legislative history of § 522(f)(3) supports the conclusion that the lien avoidance requirement of § 522(f)(3)(B) was intended to apply to debtors who utilize state exemption schemes in which lien avoidance is prohibited explicitly. *Ehlen,* 202 B.R. at 749; *Zimmel,* 185 B.R. at 793 95. Both judges found that subsection (f)(3) was enacted to restore the relationship between § 522(f) and state exemption law in a select number of jurisdictions that were affected by the Court's decision in **\*185** *Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350. In holding that § 522(f) lien avoidance applied to debtors who selected state exemptions regardless of the manner in which the state exemption law treated the lien at issue, the Supreme Court changed the law in jurisdictions that previously had prohibited debtors from avoiding liens if property subject to those liens was excepted from the state's exemption, much to the chagrin of certain creditors' groups. *Compare Owen* 500 U.S. at 312 13, 111 S.Ct. at 1837 38 (proper analysis under § 522(f) is to determine

whether debtor would be entitled to an exemption but for the lien sought to be avoided) *with Matter of McManus,* 681 F.2d 353, 356 57 (5th Cir.1982) (debtor cannot use § 522(f) to avoid a lien on exempt property when lien fell within exception to exemption under state law). As the Minnesota bankruptcy court stated:

> The *Owen* ruling, in addition to reversing prior bankruptcy law applied in Florida, effectively overruled previously applied bankruptcy law in Louisiana and Texas. Prior to *Owen,* the Fifth Circuit had ruled that 11 U.S.G. § 522(f) lien avoidance was not an available remedy for bankruptcy debtors, where either Louisiana or Texas state exemptions applied. *See Bessent v. United States,* 831 F.2d 82 (5th Cir.1987); *McManus v. Avco Financial Services of Louisiana, Inc.,* 681 F.2d 353 (5th Cir.1982); *In re Kelly,* 133 B.R. 811 (Bankr.N.D.Tex.1991). \* \* \* 11 U.S.C. § 522(f)(3) was intended to restore the law of bankruptcy lien avoidance applied in Florida, Louisiana, Texas, and perhaps other jurisdictions, prior to *Owen v. Owen.*

*Zimmel,* 185 B.R. at 794. Both Judge Utschig and the Minnesota bankruptcy court found that the second alternative in (f)(3)(B) was directed specifically at Texas law, as evidenced by an interest group statement submitted before a congressional subcommittee that specified that subsection (B) was being added to the legislation to address the "*Owen* problem" in Texas. *Ehlen,* 202 B.R. at 749; *Zimmel,* 185 B.R. at 793 94.

In sum, I conclude that Judge Utschig made the proper determination that 11 U.S.C. § 522(f)(3) did not apply to limit the extent of the debtors' lien avoidance powers in this case. Neither the language nor the history of § 522(f)(3) reveals a congressional intent to substitute the federal monetary limits for the state limits on the lien avoidance powers of debtors who choose the Wisconsin exemptions relating to tools of the trade subject to nonpossessory, nonpurchase money liens.

Case 17-22036-gmh Doc 99 Filed 08/22/18 Page 34 of 48

ORDER

The bankruptcy court's final order granting the motion of debtor-appellees Steven F. Ehlen and Beth L. Ehlen for avoidance under 11 U.S.C. § 522(f) of the nonpossessory, nonpurchase money lien of appellant United States to the extent of $15,000 is AFFIRMED.

**All Citations**

207 B.R. 179, Bankr. L. Rep. P 77,392

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit D**

*In re Ehlen*, 202 B.R. 742 (Bankr. W.D. Wis. 1996)

202 B.R. 742
United States Bankruptcy Court,
W.D. Wisconsin.

In re Steven F. EHLEN and Beth L. Ehlen, Debtors.

Bankruptcy No. 95–14204–7.
|
Oct. 16, 1996.

**Synopsis**

Debtor-farmers moved to avoid creditor's lien as nonpossessory, nonpurchase money security interest in tools of the trade to full extent of state exemption. Creditor opposed motion, contending debtors could not avoid more than $10,000 of its security interest. The Bankruptcy Court, Thomas S. Utschig, J., held that: (1) statutory cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade did not apply to debtor-farmers, who could avoid creditor's lien on their farm assets to full extent of exemption permitted under Wisconsin law; (2) debtors who utilize federal exemptions are only class of debtors excepted from coverage of lien avoidance cap statute under provision indicating that statute applies when state law permits debtor to voluntarily waive right to claim federal exemptions or prohibits debtor from claiming federal exemptions; and (3) two mutually exclusive bases for coverage under statute imposing lien avoidance cap on nonpossessory, nonpurchase money security interest in tools of trade include state laws that offer debtors unlimited exemptions but exclude property subject to consensual liens from those exemptions, and state laws that specifically preclude lien avoidance of consensual liens.

Motion to avoid lien granted.

West Headnotes (5)

**[1]** **Bankruptcy**
⚖ Tools of Trade

Statutory cap on debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade did not apply to debtor-farmers, and thus, debtors

could avoid creditor's blanket lien on all their farm assets to full extent of exemption permitted under Wisconsin law; although debtors were not excepted from statute's coverage under provision indicating that statute applies when state law permits debtor to voluntarily waive right to claim federal exemptions or prohibits debtor from claiming federal exemptions, in that debtors utilized Wisconsin rather than federal exemptions, Wisconsin law did not permit exemptions without limitation in amount or preclude lien avoidance of consensual liens. Bankr.Code, 11 U.S.C.A. § 522(f)(3); W.S.A. 815.18(3)(b), (12).

2 Cases that cite this headnote

**[2]** **Bankruptcy**
⚖ Tools of Trade

Statute restricting debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade was ambiguous, given difficulty of ascertaining particular class of debtors subject to statute's cap from examination of statute alone. Bankr.Code, 11 U.S.C.A. § 522(f)(3).

Cases that cite this headnote

**[3]** **Bankruptcy**
⚖ Tools of Trade

Debtors who utilize federal exemptions are only class of debtors excepted from coverage of statute restricting debtor's lien avoidance rights with respect to nonpossessory, nonpurchase money security interest in tools of trade under provision indicating that statute applies when applicable state law permits debtor to voluntarily waive right to claim federal exemptions or prohibits debtor from claiming federal exemptions. Bankr.Code, 11 U.S.C.A. § 522(f)(3)(A).

Cases that cite this headnote

**[4]** **Bankruptcy**
⚖ Operation and Effect

Case 17-22036-gmh    Doc 99    Filed 08/22/18    Page 37 of 48

Exemptions only apply to debtor's interest in property, but lien avoidance can apply to property that was not exempt in first instance.

1 Cases that cite this headnote

**[5]**     **Bankruptcy**
    👉 Tools of Trade

    Two mutually exclusive bases for coverage under statute imposing lien avoidance cap on nonpossessory, nonpurchase money security interest in tools of trade include state laws that offer debtors unlimited exemptions but exclude property subject to consensual liens from those exemptions, and state laws that specifically preclude lien avoidance of consensual liens. Bankr.Code, 11 U.S.C.A. § 522(f)(3)(B).

    1 Cases that cite this headnote

**Attorneys and Law Firms**

**\*743**  Howard D. White, White, Welter & Schilling, Eau Claire, WI, for Debtor.

Richard D. Humphrey, Assistant U.S. Attorney, Madison, WI, for Farm Service Agency.

*MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW*

THOMAS S. UTSCHIG, Bankruptcy Judge.

The debtors' motion to avoid the lien of Farm Service Agency ("FSA") raises serious issues of statutory interpretation which may substantially impact the ability of debtors, especially farmers, to obtain the benefits of lien avoidance under 11 U.S.C. § 522(f). FSA holds a blanket lien on the farm assets of the debtors, and has objected to their motion. The debtors are represented by Howard D. White, of White, Welter & Schilling, and FSA is represented by Assistant U.S. Attorney Richard D. Humphrey. When the debtors filed bankruptcy, they selected the Wisconsin exemptions and claimed a number of farm implements as exempt property under Wis.Stat. § 815.18(3)(b). That section grants each of the debtors

a $7,500.00 exemption in "business and farm property." No party in interest objected to their exemptions within the time proscribed by Fed.R.Bankr.P. 4003(b). In their motion, the debtors now seek to avoid FSA's lien as a "nonpossessory, nonpurchase money" security interest in tools of the trade within the meaning of § 522(f).

FSA initially disputed the value of the items in question, but the parties have apparently resolved this issue. In addition, FSA concedes that its lien is "nonpurchase money" in nature. FSA's sole objection is that the debtors cannot avoid more than $10,000.00 of its security interest. This contention is premised upon FSA's interpretation of 11 U.S.C. § 522(f)(3), a recent addition to the Bankruptcy Code. According to FSA, this section places a "cap" on the debtors' lien avoidance powers which precludes them from avoiding the lien to the full extent of the state exemption.

**\*744**  **[1]**    To reach a conclusion on this issue, the Court must begin with § 522(f) itself. When Congress enacted the Bankruptcy Code in 1978, § 522(f) and the concept of lien avoidance were quite controversial. Indeed, the section had to survive numerous constitutional challenges before emerging unscathed as one of the primary tools available to individual debtors. *See, e.g., In re Thompson,* 867 F.2d 416 (7th Cir.1989); *Matter of Barnett,* 35 B.R. 1 (Bankr.Pa.1981); *In re Cunningham,* 17 B.R. 463 (Bankr.Ky.1981). In pertinent part, § 522(f) states:

> Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

. . . . .

> a nonpossessory, nonpurchase money security interest in any

. . . . .

> implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor ...

*See* 11 U.S.C. § 522(f)(1)(B)(ii).

The underlying intent of the Bankruptcy Code is to provide financial relief for overburdened debtors while at the same time offering equitable treatment to creditors. *In re Deardorff,* 195 B.R. 904, 911 (Bankr.W.D.Wis.1996). The legislative history to § 522(f) indicates that the section was enacted to further the "fresh start" policy so inherent in the Code. *See* S.Rep. No. 95 989, 95th Cong.2d Sess. U.S.Code Cong. & Admin.News 1978 5787, 5862; *see also In re Wright,* 156 B.R. 549, 554 (Bankr.N.D.Ill.1992). Thus, taking a broad view of the section carries out "the legislative will by implementing its objective and policy [and assures] that the debtors gain a fresh start in their financial lives." *In re Henderson,* 168 B.R. 151, 156 (W.D.Tex.1993), *aff'd,* 18 F.3d 1305 (5th Cir.1994) (*quoting In re Galvan,* 110 B.R. 446, 451 (9th Cir. BAP 1990)).

The section does have its critics, and even the Seventh Circuit has questioned the relative merit of a policy which grants relief from consensual liens. In *In re Patterson,* 825 F.2d 1140 (7th Cir.1987), the debtors sought to avoid a lien on certain farm equipment and cattle, which they alleged constituted tools of their trade. In the course of its decision, the court observed:

> [W]inning this case might be a boon to the [debtors] ... [but] it would not help farmers as a group; it would raise the cost of credit to them. [A farmer] ... controls the timing of bankruptcy and can use it to take maximum advantage of the exemptions. Knowing this makes lenders even more reluctant to lend money to farmers at interest rates that farmers can afford to pay. A law that grants farmers advantages in bankruptcy helps some farmers when the law is passed but may hurt more of them by making farm credit more expensive in the future.

825 F.2d at 1142. Of course, as the *Patterson* court itself acknowledged, the mere fact that there may be some disagreement regarding the policies undergirding § 522(f) does not mean that the section should be construed narrowly. *Id.; see also Thompson,* 867 F.2d at 419 (despite policy concerns, the language of § 522(f) is clear and will be enforced accordingly).

Policy issues aside, the actual implementation of § 522(f) has also engendered debate. Recently, the Supreme Court settled one such debate when it decided *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). In *Owen,* the Court concluded that a lien may be avoided under § 522(f) if the lien impairs an exemption the debtor could have claimed "but for the lien itself." 500 U.S. at 309 12, 111 S.Ct. at 1836 37, 114 L.Ed.2d at 358 59. Accordingly, the Court held that a debtor who utilizes state exemptions may use § 522(f) and avoid a lien to the full extent of the exemption the debtor would be entitled **\*745** to claim if the lien did not exist. *Id.* at 312 14, 111 S.Ct. at 1837, 114 L.Ed.2d at 360. As will be seen shortly, the *Owen* decision plays an important role in the outcome of this case.

**[2]** The *Owen* decision raised considerable consternation among creditors' groups, and it was against this backdrop that Congress considered and ultimately enacted the Bankruptcy Reform Act of 1994, Public L. No. 103 394, 108 Stat. 4106 (1994). Included in that legislation was the amendment to § 522(f) which is at the heart of the present controversy. This addition to the lien avoidance provisions of the Code states that:

> In a case in which State law that is applicable to the debtor
>
> > (A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
> >
> > (B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;
>
> the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.00.

11 U.S.C. § 522(f)(3).

It appears that there are only two published decisions which offer any insight into the possible interpretation of this amendment to the Code, and they take diametrically opposing viewpoints. The debtors cite *In re Zimmel,* 185 B.R. 786 (Bankr.D.Minn.1995), in support of their contention that Congress added this language to § 522(f) to prevent debtors in a few states from using generous state "tools of the trade" exemptions in the lien avoidance context. In response, FSA cites *In re Parrish,* 186 B.R. 246 (Bankr.W.D.Wis.1995), in which the court determined that the interaction between § 522(f)(3) and Wis.Stat. § 815.18(12) essentially capped each debtor's lien avoidance powers at $5,000.00.

The Court's chore is to decipher the actual meaning of § 522(f)(3) as it applies to this case. FSA submits that the "plain meaning" of the section dictates that *all* debtors who utilize state exemptions are subject to a federally mandated "cap" on their lien avoidance powers. The "plain meaning" approach to statutory construction is perhaps one of the most politically and intellectually charged landmarks on the current judicial landscape. In recent years, the Supreme Court has instructed that statutes are to be construed in accordance with their "plain meaning," without resort to legislative history or other extraneous sources. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253 54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 98 (1992) ("We have stated time and again that courts must presume that a legislature says what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases' [in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.").

There has been considerable criticism of the Supreme Court's "plain meaning" philosophy.[2] Still, the notion that a court must **\*746** start with the statutory language itself is certainly not a revolutionary thought. *See Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917) ("[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.") When examining that language to ascertain its meaning, the court should:

accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous ... view words not in isolation but in the context of the terms that surround them ... likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant ... favor the more reasonable result ... [and] ... avoid construing statutes contrary to the clear intent of the statutory scheme.

*In the Matter of Merchants Grain, Inc.,* 93 F.3d 1347, 1353 (7th Cir.1996).

If the legislative intent is not clear from the statutory language, or if that language is ambiguous, other sources may be consulted in the course of the Court's investigation. *Germain,* at 254 55, 112 S.Ct. at 1149 50, 117 L.Ed.2d at 398. After careful consideration of § 522(f)(3), together with *Parrish* and *Zimmel,* the Court must conclude that this is indeed one of those "rare cases" in which the statute is truly ambiguous and subject to a variety of interpretations. *Id.; see also Ron Pair,* at 242, 109 S.Ct. at 1031, 103 L.Ed.2d at 299. While the section clearly places a cap on the lien avoidance powers available to debtors, it is difficult, if not impossible, to ascertain the particular class of debtors subject to this cap from an examination of the statute alone.

The use of the conjunctive "and" between subparts (A) and (B) of § 522(f)(3) indicates that both requirements must be satisfied before the section is applicable to a particular debtor or class of debtors. *Parrish,* 186 B.R. at 247; *Zimmel,* 185 B.R. at 791. Further interpretation is clouded by the fact that subparts (A) and (B) each contain two alternatives, either of which can render *the particular subpart* applicable to this case. In this regard, § 522(f)(3)(A) provides that state law must either permit the "voluntary waiver" of the right to claim the federal exemptions *or* prohibit a debtor from claiming those exemptions. Wisconsin has not opted out of the federal exemption scheme, and thus does not "prohibit" debtors from claiming the federal exemptions.[3] Accordingly, the question under subpart (A) is whether Wisconsin law permits debtors to "voluntarily waive" their right to claim the federal exemptions.

The notion that a state may "permit" debtors to waive their right to the federal exemptions obviously does not comport well with the traditional interaction between

Case 17-22036-gmh Doc 99 Filed 08/22/18 Page 40 of 48

state and federal law. Indeed, as the *Zimmel* court noted, it is unlikely that *any* state law would be construed to permit debtors to waive the federal exemptions, since waivers of exemptions are strictly unenforceable under § 522(e). *Id.* However, it is not clear that Congress meant that the section be interpreted in this way. In *Parrish,* the court had relatively little trouble in determining that this language relating to the "voluntary waiver" of exemptions simply refers to the typical situation in which the debtor *chooses* the state exemptions over the federal ones. 186 B.R. at 247.

**[3]**     The *Zimmel* court specifically rejected this interpretation of the subsection, and observed that the creditors in that case could not "explain why such a simple application might be expressed in such a convoluted way." 185 B.R. at 791. The court's concern regarding an interpretation is well taken. The *Parrish* analysis of subpart (A) renders the section potentially applicable to *all* debtors who utilize the state exemptions **\*747** when filing bankruptcy. Still, the legislative history provides that § 522(f)(3) applies "in cases in which the debtor has *voluntarily chosen the State exemptions* or has been required to utilize State exemptions because a State has opted out of the federal exemptions." 140 Cong.Rec. H10,764 (daily ed. Oct. 4, 1994), H.R.Rep. No. 835, 103d Cong., 2d Sess. 41, 42 (1994) [emphasis added]. As the section does not apply when the debtor chooses the federal bankruptcy exemptions, the *only* class of debtors excepted from coverage under subpart (A) are those debtors who utilize the federal exemptions. *Id.; see also Parrish,* 186 B.R. at 247. Accordingly, Wisconsin debtors can in fact fall within the purview of § 522(f)(3)(A).

**[4]**     However, this does not end the Court's inquiry, because § 522(f)(3)(B) must also cover the particular class of debtors before the corresponding "cap" on lien avoidance will apply. Subpart (B) provides that the section applies where state law either (i) permits debtors to claim unlimited exemptions, "except to the extent that the debtor has permitted the fixing of a consensual lien on any property," or (ii) otherwise "prohibits avoidance of a consensual lien on property." For whatever reason, the statute offers no guidance at all regarding what state provisions might rise to the level of a "prohibition" against lien avoidance. In *Parrish,* the court found that Wis.Stat. § 815.18(12) prohibits lien avoidance even though there is no reference to the avoidance of liens in the text of the provision.[4] The *Zimmel* court's contrary approach is based upon the premise that lien avoidance "refers to

a remedy that allows the stripping of liens in various situations," and is distinguishable from a mere exemption claim. 185 B.R. at 792. Exemptions only apply to the debtor's interest in property, but lien avoidance can apply to property that was not exempt in the first instance. *Id.*[5]

Again, given this confusion, it is necessary to consult sources outside the statutory language. The legislative history, however, is as silent as the statute itself on this issue. As a result, the Court must probe further into the events surrounding the enactment of § 522(f)(3) to determine congressional intent. As indicated previously, the Supreme Court's decision in *Owen* troubled many creditors' groups across the country. In *Owen,* the Supreme Court ruled that a Florida exception to its homestead exemption for certain preexisting judicial liens did not preclude the debtor from using § 522(f) to avoid the liens. The Court stated:

> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien is correct. The question is whether a different interpretation should be adopted for the state exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently ... [i]n light of the equivalency of treatment accorded to federal and state exemptions by § 522(d), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

At 312 13, 111 S.Ct. at 1837 38, 114 L.Ed.2d at 360.

As the *Zimmel* court recognized, the *Owen* decision altered and in essence overruled the prior practice in a number of states, most notably Florida, Louisiana, and Texas. The Fifth Circuit had previously ruled that in **\*748** those cases in which either the Texas or Louisiana exemptions

applied, § 522(f) was not available to debtors. *See Matter of Maddox,* 15 F.3d 1347 (5th Cir.1994); *Matter of Bessent,* 831 F.2d 82 (5th Cir.1987); *In re Kelly,* 133 B.R. 811 (Bankr.N.D.Tex.1991). The rationale adopted in these cases was virtually identical to the approach subsequently rejected by the Court in *Owen. Maddox,* 15 F.3d at 1351; *Zimmel,* 185 B.R. at 794. Apparently spurred to action by what they perceived to be a shift in the law in favor of debtors, creditors sought redress from Congress. In 1993, H.R. 339 was introduced in the U.S. House of Representatives. The purpose of the bill was to amend § 522(f) and make it subject to a new subsection (n). Proposed § 522(n) was to read as follows:

> The debtor may not avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)(2), if
>
> > (A) such lien is a nonpossessory, nonpurchase money security interest in any tools of the trade, implements, animals, or crops, and
> >
> > (B) the State law referred to in such subsection prohibits the debtor from avoiding the fixing of such lien to such extent.

H.R. 339, 103d Cong., 1st Sess. (Jan. 3, 1993).

This legislation was never enacted. However, when Congress was considering the Bankruptcy Reform Act of 1994, Phillip S. Corwin, Director & Counsel, Operations and Retail Banking, American Bankers Association, submitted a statement at a hearing before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives. This statement discusses not only H.R. 339, but also the terms of § 522(f)(3) as actually enacted. The statement begins as follows:

> > Restoring the unencumbered flow of agricultural and small business credit would be greatly aided by the legislative reversal of [the *Owen* decision] ... In that case, the court held that § 522(f) of the Bankruptcy Code ... applies in so-called opt out states ... Unless legislatively reversed, the doctrine [of *Owen* ], insofar as it applies to implements or tools of the trade of the debtor,

> > will have a devastating impact on the availability of credit to sole proprietorships; spanning the gamut from entrepreneurial high-tech startup firms to family farmers.

*Hearing before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives,* 103d Cong., 2d Sess., August 17, 1994, U.S.Gov. Printing Office.

The statement further reflects secured creditors' concern about the disparity between the federal exemption for "tools of the trade," which was then capped at $750.00, and the far more generous amounts available at state law.[6] According to Mr. Corwin, the bankruptcy courts had implemented *Owen* "in a manner extremely detrimental to the interests of lenders and for the future availability of credit to farmers and small businesses." *Id.* He cited cases in which courts had allowed lien avoidance on significant pieces of equipment, including dental equipment, computer hardware and software, and various tractors and other farm equipment. *Id.* The statement then characterizes H.R. 339 as a narrow legislative reversal of *Owen.* The statement reads as follows:

> H.R. 339 is designed to preserve a narrow category of consensual non-possessory, non-purchase-money liens from avoidance in bankruptcy. While its "tools of the trade" language applies generally to all debtors, the main purpose of the bill is to protect agricultural lenders who take security interests in agricultural property, and to thereby preserve the availability of agricultural loans. H.R. 339 is a narrowly drafted bill which does not restore nonavoidability to all types of liens avoidable under § 522(f) ... H.R. 339 is in no way applicable to nonpurchase-money liens on household furnishings and goods, and thus **\*749** would have no detrimental effect on consumer debtors.

*Id.* [7]

Mr. Corwin also addressed the terms of Section 313 of the Bankruptcy Reform Act, which became the present § 522(f)(3). He stated that "while [the amendment] eliminates the *Owen* problem in such states as Louisiana and Florida, it fails to provide the same benefit to Texas lenders and borrowers due to a technical defect." He then proposed the addition of the second clause of § 522(f)(3)(B), which provides for coverage in a state which

"prohibits the avoidance of a consensual lien on property otherwise eligible to be claimed as exempt." *Id.*

The statement of Mr. Corwin is replete with references to states "such as" Louisiana, Florida, and Texas, so it is clear that the proposal was intended to correct a perceived problem in more than these three states. The question is whether Wisconsin is such a state. To find the answer, perhaps the best course of action is to compare Wisconsin law to the laws of the named states and determine whether there are sufficient similarities to justify the conclusion that Wisconsin was one of the targets of § 522(f)(3).

As indicated in Mr. Corwin's statement, Louisiana was clearly the model for the first portion of subpart (B). Louisiana grants debtors an unlimited exemption in tools of the trade but excepts from the exemption "property upon which a debtor has voluntarily granted a lien." *See* La.Rev.Stat.Ann. § 13:3881(A)(2)(a), 13:3881(B)(2), and 13:3885. (West 1995). There is clearly no similarity between Louisiana's tools of the trade exemption and Wisconsin's business and farm property exemption. Under Wis.Stat. § 815.18(3)(b), the exemption is limited to $7,500.00 per debtor. Accordingly, Wisconsin does not permit "exemptions without limitation in amount," and this part of the section does not apply.

Thus, even though § 522(f)(3)(A) facially applies to debtors located in Wisconsin, the "cap" on lien avoidance is applicable only if Wisconsin debtors are covered by the last phrase in subpart (B). This portion of § 522(f)(3)(B) was added specifically to benefit Texas lenders, although it likely applies to all debtors similarly situated. Texas provides debtors with a "personal property exemption" in an aggregate value of $60,000.00 per family, or $30,000.00 per individual debtor. *See* Tex.Prop.Code.Ann. §§ 42.001(a)(1), (a)(2), and 42.002(a)(4) (West 1995). Despite the generous dollar amount of this exemption, it is limited by the following provision:

> Personal property, unless precluded from being encumbered by other law, may be encumbered by a security interest ... or ... lien fixed by other law, *and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.*

Tex.Prop.Code.Ann. § 42.002(b) [emphasis added].

This is the type of state provision Mr. Corwin and the creditors' groups contemplated when they proposed the addition of the second phrase in § 522(f)(3)(B). The question is whether Wis.Stat. § 815.18(12) is sufficiently similar to this Texas provision to justify a finding that Wisconsin falls under subpart (B). In *Parrish* the court found an express prohibition against lien avoidance in the "opacity and ... confusing disjunctions" of § 815.18(12). 186 B.R. at 247. This Court agrees that the Wisconsin provision is muddled and vague. However, unlike the Texas provision cited above, there is no reference to lien avoidance in the text of § 815.18(12). The Wisconsin statute simply provides that property subject to a consensual lien may not be claimed as exempt.

This Court agrees with the decision in *Zimmel.* There the court found that Minnesota law did not contain a provision comparable to the one found in Texas exemption law. **\*750** Accordingly, the court held that § 522(f)(3) was inapplicable in Minnesota. 185 B.R. at 795. The court was not swayed by the fact that Minnesota law did not permit debtors to claim encumbered property as exempt. Put simply, the court found that Minnesota law "does not speak to lien avoidance," and a broader reading of § 522(f)(3) would do more than reverse *Owen.* It would alter the settled law in jurisdictions where state law had not been found to preclude lien avoidance by debtors who chose the state exemptions. *Id.*

In this case, the Court reaches a similar conclusion about Wis.Stat. § 815.18(12). The Court can glean no express prohibition against lien avoidance from the language of this section, because it does not speak to lien avoidance. It speaks to the types of property which qualify as exempt. Such a statute is far closer to the type of provision found in Louisiana and similar states. Like the Louisiana statute, Wis.Stat. § 815.18(12) defines or qualifies the Wisconsin exemptions in a way that precludes debtors from claiming the property as exempt. Unlike Louisiana law, Wisconsin does not offer unlimited exemptions, and this indicates that there must be a third group of states contemplated by § 522(f)(3) a group not covered by the "cap" on avoidance.

**[5]** It is clear that § 522(f)(3)(B) contains two *mutually exclusive* bases for coverage. A state may qualify for coverage under the first phrase, which deals with states like Louisiana that offer unlimited exemptions but

Case 17-22036-gmh    Doc 99    Filed 08/22/18    Page 43 of 48

exclude property subject to consensual liens from those exemptions. A state may also fall within the purview of the second phrase, which covers those states that specifically preclude "lien avoidance" of consensual liens. However, there is nothing in the text of the section which indicates that it is applicable to *all* states, and the comments of Mr. Corwin suggest the opposite. Accordingly, the fact that Wisconsin law is not sufficiently similar to Louisiana law to fall within the scope of the first phrase of subpart (B) does not mandate the conclusion that Wisconsin is subject to the second portion of the subpart.

Indeed, FSA's construction of the second part of § 522(f)(3)(B) essentially consumes the first part, and thus violates a fundamental tenet of statutory construction that the Court is to avoid rendering any part of a statute redundant or superfluous, and is to construe a statute in such a manner as to give effect to all of its provisions. *Merchants Grain,* 93 F.3d at 1353. FSA's interpretation of the section as a blanket cap on all debtors requires the Court to characterize Wis.Stat. § 815.18(12) as a "prohibition" against lien avoidance. If this were the correct analysis of the statutory language, Louisiana would also fall within the scope of the second part of the section because Louisiana carves out a similar exception for consensual liens in its exemption law. As a result of this interpretation, the first part of § 522(f)(3)(B) would be redundant and unnecessary. The Court must thus construe the second phrase in a more limited manner so that the first retains meaning.

FSA's interpretation of § 522(f)(3)(B) is also in conflict with the stated legislative purpose behind the amendment. It is clear from the statements made by Mr. Corwin in support of both H.R. 339 and the present § 522(f)(3)

that the section was intended to be a "narrow" reversal of *Owen.* It was intended simply to correct a problem in a few states, not necessarily alter the settled law of the entire nation. *Zimmel,* 185 B.R. at 795. Wisconsin debtors have long been able to claim the full benefit of the Wisconsin exemptions in the lien avoidance context, and nothing in Wisconsin law appears to bar such a result. *See Thompson,* 867 F.2d at 418 19; *Patterson,* 825 F.2d at 1146. There is nothing in the legislative history or Mr. Corwin's statement which would indicate that the section was intended to overturn such longstanding legal principles.

Finally, an expansive reading of § 522(f)(3) is not in keeping with the intent of § 522(f) itself. The section was adopted to further the "fresh start" policy of the Code and to assure that debtors have a measure of financial stability as they proceed forward with their lives. *Henderson,* 168 B.R. at 156. FSA's interpretation of § 522(f)(3) interferes with this clear legislative policy and is unwarranted because there is scant, if any, evidence that Congress desired such a radical alteration of the status quo. **\*751** *Zimmel,* 185 B.R. at 795. Accordingly, the debtors may avoid FSA's lien to the full extent of the exemption available under Wis.Stat. § 815.18(3)(b), which in this case constitutes an aggregate amount of $15,000.00.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

**All Citations**

202 B.R. 742

Footnotes

1    The legislative history specifically states that:
     [To] protect the debtor's exemptions, his discharge, and thus his fresh start ... [t]he debtor may avoid ... to the extent that the property could have been exempted in the absence of the lien ... a nonpossessory, nonpurchase money security interest in certain household and personal goods.

2    A great deal of this criticism stems from the concern that the study of language is at best an inexact science, and words are often subject to multiple interpretations. *See generally* Thomas G. Kelch, *An Apology for Plain–Meaning Interpretation of the Bankruptcy Code,* 10 Bankr.Dev.J. 289 (1994). In truth, perhaps Lewis Carroll best captured the essence of this debate:
     "When I use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."
     "The question is," said Alice, "whether you can make words mean so many things."
     "The question is," said Humpty Dumpty, "which is to be master—that's all."

WESTLAW   © 2018 Thomson Reuters. No claim to original U.S. Government Works.   8

Lewis Carroll, *Through the Looking Glass and What Alice Found There,* Clarkson N. Potter, Inc. p. 80–81.

3    Under the Bankruptcy Code, states are allowed to opt out of the federal exemptions by specifically prohibiting debtors to claim the exemptions enumerated in § 522(d). The authority for such state legislation is found in § 522(b)(1). While the majority of states have in fact opted out, Wisconsin has not.

4    The *Parrish* court found that Wis.Stat. 815.18(12), "despite its opacity and its confusing disjunctions," nonetheless expressly prohibited the avoidance of a consensual lien. 186 B.R. at 248. In pertinent part, this section states:

>Limitation on Exemptions. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest of a holder of a security interest, land contract, condominium or homeowner's association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

5    Indeed, as one court recently stated, "[i]t is clear that the analysis of lien avoidance ... involves more than the determination of exemption rights under state law." *In re Mulch,* 182 B.R. 569 (Bankr.N.D.Cal.1995).

6    The Reform Act raised the federal "tools of the trade" exemption to $1,500.00. *See* 11 U.S.C. § 522(d)(6). Despite this increase, however, the federal exemption remains far less generous than the exemptions available in many states, including Wisconsin.

7    As can be seen from a comparison between the language of H.R. 339 and the actual text of § 522(f)(3), the original relief sought by creditors was far broader than what they ultimately received from Congress. As proposed, H.R. 339 would have totally precluded debtors subject to its terms from utilizing the lien avoidance provisions of the Code in connection with "tools of the trade." Section 522(f)(3) affords debtors significantly more relief, even though it may be less than what they could have received under state law. This fact alone, however, does not automatically mandate that the "cap" in question applies in Wisconsin.

---

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit E**

*In re Parrish*, 186 B.R. 246 (Bankr. W.D. Wis. 1995)

186 B.R. 246
United States Bankruptcy Court,
W.D. Wisconsin.

In re Jeanne M. PARRISH, Debtor.

Bankruptcy No. 95–30789–7.
|
Aug. 29, 1995.
|
As Amended Sept. 28, 1995.

**Synopsis**

Chapter 7 debtor-farmer exempted two tractors as "tools of the trade" under Wisconsin law, and she moved to avoid bank's lien on tractors, arising from bank's nonpurchase money security interest in tractors. Bank objected. The Bankruptcy Court, Robert D. Martin, Chief Judge, held that, because debtor had opted for state exemptions and Wisconsin law prohibited avoiding of consensual liens, Bankruptcy Code provision allowing states to prohibit avoiding of lien to extent it exceeded $5000 authorized debtor to avoid bank's lien to that extent.

So ordered.

West Headnotes (1)

**[1]** **Bankruptcy**

⬤ Consensual Liens;Mortgages

Wisconsin law prohibited avoiding of consensual liens, and thus, under Bankruptcy Code provision allowing states to prohibit avoiding of lien to extent it exceeded $5000, Chapter 7 debtor-farmer could avoid bank's lien on her two tractors, arising from bank's nonpurchase money security interest in tractors, to extent of $5000, after debtor opted to exempt tractors as "tools of the trade" under Wisconsin statute. Bankr.Code, 11 U.S.C.A. § 522(f)(1)(B), (f)(3); W.S.A. 815.18(3)(b), (12).

5 Cases that cite this headnote

**Attorneys and Law Firms**

**\*246** Claire Ann Resop, Jenswold, Studt, Hanson & Gennrich, Madison, WI, for debtor.

J. David Krekeler, Collins, Beatty & Krekeler, Madison, WI, for First Natl. Bank of Platteville.

MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Jeanne Parrish ("Parrish") filed a Chapter 7 bankruptcy on March 13, 1995 and elected **\*247** the exemptions provided by the State of Wisconsin. At the time of filing, Parrish was engaged in farming and claimed an exemption for two tractors as "tools of the trade" under WisStat § 815.18(3)(b) for $7,500, the full amount exemptible under the statute. The two tractors were subject to a non-purchase money security interest of First National Bank of Platteville ("Bank").

Parrish moved to avoid Bank's lien pursuant to 11 U.S.C. § 522(f)(1)(B) (1995). The Bank objected and a hearing was held on June 29, 1995. The basis of the Bank's objection was that Parrish was no longer engaged in farming and therefore was not entitled to the exemption. The objection was overruled because at the time of filing, Parrish was engaged in farming and after filing, intended to resume farming. Although found to be entitled to the exemption and to avoid the Bank's lien, the extent to which Parrish may avoid the lien was taken under advisement.

The Bank argued that under 11 U.S.C. § 522(f)(3) (1995), Parrish could only avoid Bank's lien up to $5,000. Section 522(f)(3) is part of the newly enacted Bankruptcy Reform Act of 1994 and is applicable in the present case, which was filed after October 21, 1994. At the time of the hearing, there was little help from either case law or legislative history concerning the interpretation and impact of § 522(f)(3).

Section 522(f)(3) provides:

(3) In a case in which State law is applicable to the debtor

(A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;

the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.

Neither party disputes that in order for the section to apply, two separate criteria must be met. First, either the debtor has voluntarily chosen to use the state exemptions or the state has opted out of the federal exemptions. 11 U.S.C. § 522(f)(3) legislative history and comment (1995). In the present case, although Parrish could have chosen the federal exemptions, she opted for the state exemptions. Thus, the first requirement has been met.

The second requirement is that either the state statute provides an unlimited exemption of property, or it prohibits avoidance of a consensual lien that could otherwise be claimed exempt. The Bank does not contend that Wisconsin allows debtors to claim exemptions in an unlimited amount. Rather, it argues that Wisconsin expressly prohibits the avoiding of consensual liens. Section 815.18(12) of the Wisconsin Statutes provides:

(12) Limitations on Exemptions. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or **\*248** against the claim or interest of a holder of a security interest, land contract, condominium or homeowners association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

This statute, despite its opacity and its confusing disjunctions, expressly prohibits the avoiding of a consensual lien; the very type of lien at issue. Because Wisconsin law prohibits the avoiding of consensual liens, the second prong of the test has been met. However, unlike the state which prohibits the avoidance of a consensual lien, § 522(f)(3) only limits the amount that may be avoided in "tools of the trade" to $5,000. Because the transaction fits within § 522(f)(3), Parrish may avoid Bank's lien, to the extent of $5,000. It may be so ordered.

### All Citations

186 B.R. 246, Bankr. L. Rep. P 76,786

---

### Footnotes

1    It is the second requirement which represents a major change in the law. In *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Court was asked to determine the ability of the debtor to avoid a judgment lien on property which would otherwise be exemptible, but for the lien. Under Florida law, the debtor could not avoid the encumbrance. However, the Court determined that a debtor's entitlement to an exemption, and accordingly his ability to avoid a lien which it impairs, in a state which has opted out of the federal exemptions is determined under federal law and not the law of the individual state. Thus, the court paid little deference to the state. However, with the passage of § 522(f)(3), the state has been given the ability to prohibit the avoiding of a lien to the extent it exceeds $5,000.

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.